Doua YANG, et al., Plaintiffs,

Lao Xiong, Appellant,

v.

VOYAGAIRE HOUSEBOATS, INC.,
defendant and third-party
plaintiff, Respondent,

B.J.M., Inc., defendant and third-
party plaintiff, Respondent,

v.

Lao Xiong, Appellant,

Doua Yang, et al., Third–
Party Defendants.

Nos. A03–1842, A03–2000.

Supreme Court of Minnesota.

Aug. 4, 2005.

Patrick J. Sauter, Steven M. Sitek, Paula Duggan Vraa, Rider, Bennett, LLP, Minneapolis, MN, for Appellant.

John M. Colosimo, Mitchell J. Brunfelt, Colosimo, Patchin, Kearney & Brunfelt, Ltd., H. Jeffrey Peterson, Andrew R. Peterson, Cope & Peterson, Ltd., Virginia, MN, for Respondent.

## OPINION

RUSSELL A. ANDERSON, Justice.

This case concerns the enforceability of exculpatory and indemnification clauses in a houseboat rental agreement between appellant Lao Xiong and respondent Voyagaire Houseboats, Inc.[1] After Xiong and

---

1. Respondent B.J.M., Inc. owns the houseboat and leased the houseboat to Voyagaire. Despite how this case is captioned, it appears that there is no Minnesota corporation named

members of his vacationing party suffered carbon monoxide poisoning on board the houseboat, they brought personal injury actions against Voyagaire. In this appeal from summary judgment, we are asked to review the decisions of the courts below that (1) the exculpatory clause in the houseboat rental agreement is enforceable, barring Xiong's claims against Voyagaire; and (2) the indemnification clauses in the houseboat rental agreement are enforceable, requiring Xiong to indemnify Voyagaire for the claims by the other members of his vacationing party. We conclude that the exculpatory and indemnification clauses in the houseboat rental agreement are not enforceable, holding that Voyagaire's rental of the houseboat to Xiong constitutes a public service and that the exculpatory and indemnification clauses violate public policy. We therefore reverse and remand to the district court.

Voyagaire is located on the shore of Crane Lake, near Voyageurs National Park in northern Minnesota. Voyagaire promotes itself as having "the largest houseboat rental operation in the Midwest." Voyagaire's website describes the houseboats as "floating homes," which for over 40 years "have been accommodating small and large groups of explorers, families and fishing parties." Voyagaire offers at least seven models of houseboats, for daily and weekly rental. In addition, Voyagaire operates a lodge with a restaurant and 12 lodge rooms.

In 2002, Xiong began planning a vacation with his girlfriend and her extended family. Xiong contacted Voyagaire by telephone to inquire about renting a houseboat. After several calls, Xiong reserved a houseboat for a week. As required by Voyagaire's policy, Xiong paid in advance for the houseboat—"a couple thousand" dollars. Xiong later contacted Voyagaire and upgraded to a "Deluxe Sportcruiser—440" model, a houseboat with five double beds; a penthouse bedroom; toilet and shower facilities; a kitchen area, including a refrigerator, stove, microwave, and sink; air conditioning; a built-in generator; and a swim platform with a water slide.

On June 8, 2002, Xiong's vacationing party, consisting of six adults and four children, met in Minneapolis and traveled as a group to Crane Lake. When they arrived, Xiong met with James Janssen, an owner of Voyagaire, who presented Xiong with a houseboat rental agreement. No one representing Voyagaire had mentioned the rental agreement before. After looking at the agreement, Xiong told Janssen that he did not understand it. The rental agreement contained exculpatory and indemnification clauses, which provide in relevant part:

> In consideration for being permitted the use of Voyagaire Houseboats equipment, the Renter, *Lao Xiong*, his/her family, relatives, heirs and legal representatives do hereby waive, discharge and covenant not to sue Voyagaire Houseboats * * *, any affiliated companies, or any of its officers or members for any loss or damage, or any claim or damage or any injury to any person or persons or property, or any death of any person or persons whether caused by negligence

Voyagaire Houseboats, Inc. However, there is a limited liability partnership named J & G Enterprises of KAB, LLP, which does business as Voyagaire Lodge and Houseboats. In accordance with the parties' stipulation, the district court granted the motions of Xiong and other plaintiffs to amend their complaints to add J & G Enterprises of KAB, LLP, as

defendants. It appears that James Janssen and his wife, Gretchen Janssen, operate Voyagaire Lodge and Houseboats. The Janssens also are principals in B.J.M., Inc. Unless otherwise noted, respondents will be referred to collectively as "Voyagaire." We leave it to the district court to determine the proper party defendants on remand.

or defect, while such rental equipment is in my possession and/or under my use as in accordance to the terms stated in this agreement.

I agree to keep said equipment safe and return it to Voyagaire Houseboats station from which it was rented and in as good condition as when received, and in default thereof, I agree to pay all loss and damage they may sustain by reason of any such failure and I further agree at my cost and expense, to defend and save Voyagaire Houseboat[s] harmless on account of any and all suits or demands brought or asserted by reason of injuries to any person, persons or property whatsoever caused by the use or operation of said equipment while in my possession and to pay all judgments, liens or other encumbrances that may be levied against Voyagaire Houseboats or the said equipment on account of the use thereof. It is further understood and agreed upon that the undersigned will be liable for all fines, penalties, citations, warnings, and forfeitures imposed for violations of the law while the equipment is being held used or operated pursuant to this agreement. Renter agrees that the Owner maintains no control over Renter's use of vessel except as set forth in this Agreement. Therefore, Renter shall indemnify and hold harmless Owner from and against all claims, actions, proceedings, damage and liabilities, arising from or connected with Renter's possession, use and return of the boat, or arising at any time during the term of this rental.

Janssen reportedly told Xiong that he did not understand the rental agreement either, but assured Xiong that an optional $25 per day insurance fee "would cover everything that could happen to the boat." Xiong "took his word," accepted the insurance, and signed the rental agreement. If Xiong had not signed the agreement, Voyagaire would not have allowed him to rent the houseboat.

After Xiong signed the agreement, he was taken to the houseboat. Xiong was unfamiliar with houseboat operations, so a Voyagaire employee showed him certain features of the houseboat. The employee also told Xiong about Voyagaire's hospitality service for guests who had problems or needed supplies while using the houseboat. According to Xiong, Voyagaire never specifically warned him about the risks of carbon monoxide poisoning.

Near the end of the week—the evening of June 13 or the early morning of June 14, 2002—several members of the vacationing party began feeling drowsy and nauseated. A member of the party radioed for help, and Xiong and five other persons were taken to Falls Memorial Hospital in International Falls. Each was treated for carbon monoxide poisoning and released the same day.

The Voyagaire employee who responded to the emergency call discovered that a carbon monoxide detector wire, which was located behind the back of a kitchen drawer, had been disconnected. Xiong denies that he or any member of his party disconnected the detector, and Xiong denies hearing an alarm sound.

The source of the carbon monoxide was not determined. Xiong suggested that a defective generator led to the carbon monoxide exposure. Voyagaire suggested that the carbon monoxide exposure was caused by the party's efforts to make adjustments to the cooking stove and furnace on the houseboat.

Xiong sued Voyagaire in St. Louis County District Court, alleging that he "sustained severe and permanent injuries, including permanent brain damage," as a result of his exposure to carbon monoxide. According to the complaint, Voyagaire's

negligence included failing to maintain the houseboat in a safe and habitable condition; failing to perform proper inspections of the houseboat; failing to comply with applicable regulations and requirements relating to "proper ventilation of vessels" and "proper safety equipment and devices"; and failing to warn of dangerous conditions aboard the houseboat, including potential exposure to carbon monoxide. The other nine members of Xiong's party also sued Voyagaire in three separate actions, making similar allegations of negligence. The district court consolidated the cases for trial.

Voyagaire denied that it was negligent and alleged that Xiong's claims were barred by the exculpatory clause in the rental agreement. Voyagaire also brought a third-party action against Xiong, alleging that he had agreed to indemnify Voyagaire from any claim or lawsuit arising from his use and operation of the houseboat. Voyagaire moved for summary judgment, seeking to enforce the exculpatory and indemnification clauses in the rental agreement. Xiong filed a cross-motion for summary judgment, arguing that the exculpatory and indemnification clauses are unenforceable. The district court granted Voyagaire's motion for summary judgment. The district court later issued a clarifying order dismissing Xiong's claims and requiring Xiong to indemnify Voyagaire for the claims of the remaining nine plaintiffs.[2]

The court of appeals affirmed summary judgment. *Yang v. Voyagaire Houseboats, Inc.*, Nos. A03–1842 & A03–2000, 2004 WL 2049843 (Minn.App. Sept.14, 2004). The court of appeals concluded that Xiong's claims are barred by the exculpatory clause because "(1) Voyagaire does not provide a necessary or public service; (2) renting a houseboat is a recreational activity; (3) there was no disparity in bargaining power; and (4) the contract is not ambiguous." *Id.* at *4. The court of appeals also concluded that Xiong is required to indemnify Voyagaire for the claims of the other nine plaintiffs because "the indemnification clause is sufficiently clear, sufficiently broad, and is not void on public-policy grounds." *Id.* at *6. We granted review to determine the enforceability of the exculpatory and indemnification clauses in the houseboat rental agreement.

## I.

On appeal from summary judgment, we determine whether there are any genuine issues of material fact and whether a party is entitled to judgment as a matter of law. *Christensen v. Milbank Ins. Co.*, 658 N.W.2d 580, 584 (Minn.2003). Here, we view the facts in the light most favorable to Xiong, the party against whom summary judgment has been granted. *See Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). Whether a clause in a rental agreement—a contract provision—is ambiguous is a question of law reviewed de novo. *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003). The construction and effect of an

2. Voyagaire also brought third-party actions against the other five adult members of the vacation party as members of a joint enterprise with Xiong. Voyagaire alleged that the adult members of the vacationing party agreed to assume all the risks associated with the use and operation of the houseboat and they agreed to be bound by the exculpatory and indemnification clauses in the houseboat rental agreement. In denying Voyagaire's motion for summary judgment, the district court determined that Xiong and the adult members of the vacationing party were not engaged in a joint enterprise and therefore the other members of the party are not bound by the exculpatory and indemnification clauses in the rental agreement. These issues, including the existence of a joint enterprise, are not before us.

unambiguous contract also are questions of law. *Id.*

## II.

■ We first examine the enforceability of the exculpatory clause in the houseboat rental agreement. Exculpatory clauses are "not favored," and they are "strictly construed against the benefited party." *Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 923 (Minn.1982). An exculpatory clause is unenforceable if it is ambiguous in scope, purports to release the benefited party from liability for intentional, willful or wanton acts; or contravenes public policy. *Id.* In determining whether an exculpatory clause violates public policy, we consider (1) whether there was a disparity in bargaining power between the parties and (2) the types of services being offered or provided, taking into consideration whether they are public or essential services. *Id.; see also* Restatement (Second) of Contracts § 195(2)(b) (1981) (stating that "[a] term exempting a party from tort liability for harm caused negligently is unenforceable on grounds of public policy if * * * the term exempts one charged with a duty of public service from liability to one to whom that duty is owed.").

■■ In this case, we focus our analysis on the public policy considerations. We conclude that the dispositive factor in determining the enforceability of the exculpatory clause here is the type of service that Voyagaire offers.[3] In examining whether the service being offered is a public or essential service, we "consider whether it is the type generally thought suitable for public regulation." *Schlobohm*, 326 N.W.2d at 925. "Types of services thought to be subject to public regulation have included common carriers, hospitals and doctors, public utilities, innkeepers, public warehousemen, employers and services involving extra-hazardous activities." *Id.* (footnotes omitted). In contrast, courts generally have held that contracts relating to recreational activities "do not fall within any of the categories where the public interest is involved." *Id.* at 925–26 (citations omitted).

■ Xiong asserts that the exculpatory clause in the houseboat rental agreement is not enforceable because "Voyagaire essentially functions as an 'innkeeper'" by providing sleeping accommodations to the public. *See* Minn.Stat. § 327.70, subds. 3–4 (2004) (defining an "innkeeper" as "an owner or operator" of a "hotel, motel, resort, boarding house, bed and breakfast, furnished apartment house or other building, which is kept, used or advertised as, or held out to the public to be, a place where sleeping or housekeeping accommodations are supplied for pay to guests for transient occupancy"). Xiong further asserts that "houseboat rental is subject to public regulation as a resort," and refer-

---

**3.** Although our decision on the enforceability of the exculpatory clause rests primarily on the nature of the service that Voyagaire offers, the circumstances here, viewed in the light most favorable to Xiong, suggest that there was some disparity in bargaining power between Voyagaire and Xiong. Voyagaire required Xiong to pay the rental fee—"a couple thousand" dollars—in advance; Voyagaire did not tell Xiong about the rental agreement until he had traveled for over four hours to get to Crane Lake; Voyagaire told Xiong that insurance would cover "everything that could happen to the boat" after Xiong had indicated that he did not understand the language in the rental agreement; and Voyagaire would have refused to rent the houseboat to Xiong unless he signed the rental agreement. In addition, Xiong presented evidence that the nearest houseboat rental company was over 65 miles away and did not have any houseboats available, although Voyagaire asserts that there were "other lodging and recreational activities available throughout the area."

ences Minn.Stat. § 157.15, subd. 11 (2004), which states:

> "Resort" means a building, structure, enclosure, or any part thereof located on, or on property neighboring, any lake, stream, skiing or hunting area, or any recreational area for purposes of providing convenient access thereto, kept, used, maintained, or advertised as, or held out to the public to be a place where sleeping accommodations are furnished to the public, and primarily to those seeking recreation for periods of one day, one week, or longer, and having for rent five or more cottages, rooms, or enclosures.

*See also* Minn.Stat. §§ 157.011–.22 (2004) (addressing the licensing and regulation of food, beverage, and lodging establishments, including resorts); Minn. R. 4625.0100–.2355 (2005) (establishing standards for lodging establishments, including hotels, motels, and resorts).

Voyagaire, on the other hand, argues that the exculpatory clause is enforceable because renting houseboats "is a purely recreational activity" and is not a necessary or public service. Although Voyagaire acknowledges that it "may be considered an innkeeper in its capacity as a hotel and lodge," Voyagaire contends that its rental of houseboats is separate from its functions as a resort. As the court of appeals noted, the statutory definition of resort "does not mention houseboats," *see* Minn.Stat. § 157.15, subd. 11, and a "houseboat" is defined elsewhere in Minnesota Statutes as a "motorboat," *see* Minn. Stat. § 103G.245, subd. 4(2) (2004). *Yang,* 2004 WL 2049843, at *3.

**4.** Voyagaire maintains that houseboats do not constitute part of the resort because "[i]t is the rental of cottages, rooms or other *land* enclosures which qualifies it as a resort." (Emphasis added.) However, the adjective

We disagree with Voyagaire's characterization of the houseboats as merely "recreational equipment." Voyagaire's own website describes the houseboats as "floating homes." Although not anchored to the ground, the houseboat that Xiong rented has five double beds, a penthouse bedroom, a kitchen area, a toilet, and shower. *See also* Minn.Stat. § 103G.245, subd. 4(2) (defining a "houseboat" for purposes of public waters work permits as a motorboat that has "a permanent enclosed superstructure housing, at a minimum, built-in sleeping, cooking, and toilet facilities").

By offering houseboats for daily and weekly rental on Crane Lake, Voyagaire was furnishing sleeping accommodations to members of the public seeking recreation. These constitute resort functions. *See* Minn.Stat. § 157.15, subd. 11 (defining "resort").[4] Consequently, we conclude that the services offered by Voyagaire—including the rental of houseboats—qualify Voyagaire as a "resort" subject to regulation under Chapter 157 of Minnesota Statutes. As a resort offering sleeping accommodations to the public in its lodge rooms as well as on its houseboats, Voyagaire meets the statutory definition of an "innkeeper" in Minn.Stat. § 327.70, subds. 3–4.

Therefore, it is appropriate to treat Voyagaire as an innkeeper providing a public service in determining the enforceability of the exculpatory clause in the houseboat rental agreement. Innkeepers generally have a duty to take reasonable action to protect their guests. *See Connolly v. Nicollet Hotel,* 254 Minn. 373, 380, 95 N.W.2d 657, 663 (1959) (stating that an "innkeeper owes a duty to the public to

"land" is not part of the statutory definition of resort, and the definition specifically includes structures or enclosures *on* a lake. *See* Minn. Stat. § 157.15, subd. 11.

protect it against foreseeable risk of danger attendant upon the maintenance and operation of his property"); Restatement (Second) of Torts § 314A(2) (1965) (stating that an innkeeper has a duty to its guests to take reasonable action to protect them against unreasonable risk of physical harm). This duty applies regardless of whether the guests are occupying lodge rooms or houseboats. We conclude that as a matter of public policy, Voyagaire cannot circumvent its duty to protect its guests by requiring the guests to sign a rental agreement containing an exculpatory clause that purports to release Voyagaire from liability for the resort's negligence. *See* 2 J.D. Lee & Barry A. Lindahl, *Modern Tort Law: Liability & Litigation* § 22:10 (2d ed.2002) (noting that "[a]t common law, a hotel or innkeeper could not contract away liability for negligence" because "[t]he innkeeper was bound by a public or quasi-public duty"). Therefore, we conclude that the exculpatory clause in the houseboat rental agreement is contrary to public policy and is not enforceable.

### III.

 Next, we examine the enforceability of the indemnification clauses in the houseboat rental agreement. "Agreements seeking to indemnify the indemnitee for losses occasioned by its own negligence are not favored by the law and are not construed in favor of indemnification unless such intention is expressed in clear and unequivocal terms, or unless no other meaning can be ascribed to it." *Nat'l Hydro Sys. v. M.A. Mortenson Co.*, 529 N.W.2d 690, 694 (Minn.1995) (quotations

omitted). We also will not enforce an indemnification clause if it is contrary to public policy. *See, e.g., Zerby v. Warren*, 297 Minn. 134, 144, 210 N.W.2d 58, 64 (1973) (concluding that an indemnity agreement that seeks to relieve a party of the consequences of a violation of a public duty imposed by statute is void); 8 Richard A. Lord, *Williston on Contracts* § 19:19 (4th ed.1998) (stating that indemnity clauses are not upheld if they tend to promote a breach of a duty to the public); *cf.* Minn.Stat. § 337.02 (2004) (stating that "[a]n indemnification agreement contained in, or executed in connection with, a building and construction contract" is generally unenforceable).

There are two indemnification clauses in the houseboat rental agreement. The first clause provides:

> I further agree at my cost and expense, to defend and save Voyagaire Houseboat[s] harmless on account of any and all suits or demands brought or asserted by reason of injuries to any person, persons or property whatsoever caused by the use or operation of said equipment while in my possession * * *.

The second clause provides:

> Renter shall indemnify and hold harmless Owner from and against all claims, actions, proceedings, damage and liabilities, arising from or connected with Renter's possession, use and return of the boat, or arising at any time during the term of this rental.

 Again, we focus our analysis on the public policy considerations.[5] As

---

**5.** Although our emphasis here is on the public policy factors, we also determine that the indemnification clauses are not enforceable because the language is not clear and unequivocal. *See Nat'l Hydro Sys.*, 529 N.W.2d at 694. Strictly construed, the indemnification clauses do not contain language that (1)

specifically refers to negligence, (2) expressly states that the renter will indemnify Voyagaire for Voyagaire's negligence, or (3) clearly indicates that the renter will indemnify Voyagaire for negligence occurring before the renter took possession of the houseboat. Overall, we cannot say that the language in

noted in our discussion of the enforceability of the exculpatory clause, Voyagaire is a resort that provides a public service by furnishing sleeping accommodations to the public. Consequently, it is appropriate to treat Voyagaire as an innkeeper for purposes of determining the enforceability of the indemnification clauses. As a matter of public policy, innkeepers cannot shift liability for their own negligence onto the guests they have a duty to protect. It makes no difference that the guests are sleeping on a houseboat rather than in on-land sleeping accommodations. Therefore, we conclude that the indemnification clauses in the houseboat rental agreement, which purport to require Xiong to indemnify Voyagaire for Voyagaire's negligence, violate public policy and are unenforceable.[6]

Considered in a broader context, it would be unfair to hold a private individual liable for the negligence of a business that resulted in serious injuries to several people, particularly where the individual was not warned about the specific risks involved—in this case, the risks of carbon monoxide exposure.[7] Moreover, as a practical matter, shifting liability to a private individual like Xiong likely would result in the loss of compensation to injured parties. See Lee & Lindahl, supra, § 20:4 (explaining that unlike an exculpatory clause, "an indemnity agreement does not deny compensation to the party injured, but instead

---

the indemnification clauses fairly apprised Xiong of an obligation to indemnify Voyagaire not only for his own negligence that occurred while he was using the houseboat, but also the negligence of Voyagaire that occurred before the rental term began.

We reject the court of appeals' suggestion that the requirement of clear and unequivocal language concerning the scope of the indemnification clause applies only in the context of building and construction contracts. See Yang, 2004 WL 2049843, at *5. Although many of our indemnification decisions have involved the construction setting, we never have indicated that the requirement of clear and unequivocal language applies only to building and construction contracts. Moreover, indemnification clauses in building and construction contracts are now governed by statute, which makes indemnification clauses in those types of contracts generally unenforceable. See Minn.Stat. § 337.02.

6. In Schlobohm, we stated in dicta that "an indemnity clause and an exculpatory clause differ in form," but "they are usually given the same treatment by the courts." 326 N.W.2d at 922 n. 3. Although we give the exculpatory clause and the indemnification clauses the same treatment here because the public policy considerations are similar, we caution against too much reliance on our observation in Schlobohm. We examine the enforceability of exculpatory and indemnifica-

tion clauses under different standards. Indemnification clauses are subject to greater scrutiny because they release negligent parties from liability, but also may shift liability to innocent parties.

7. Voyagaire maintains that "[t]here has been no evidence in the record to suggest negligence on the part of Voyagaire," arguing that that "[t]he reasonable inference is that Lao Xiong and/or his guests disconnected the carbon monoxide detector," and that the carbon monoxide exposure resulted from the plaintiffs' "adjustments to a propane cookstove and furnace aboard the houseboat." However, at one point, James Janssen himself theorized that the wires to the carbon monoxide detector on the houseboat became disconnected when a kitchen drawer pulled the wires loose. In addition, Voyagaire repaired the generator on the houseboat five days after the carbon monoxide exposure occurred, and Voyagaire later removed the generator from the houseboat. In any event, these arguments are not relevant to the issue of the enforceability of the indemnification clauses. Furthermore, in view of Xiong's denials, these are fact issues inappropriate for resolution on summary judgment. See Teffeteller v. Univ. of Minn., 645 N.W.2d 420, 432 (Minn.2002) (explaining that "[i]n a summary judgment motion, a court may not weigh the evidence or make factual determinations, but is required to view the evidence in the light most favorable to the nonmoving party").

determines who will bear the loss"). Voyagaire has not cited a court decision from anywhere in the country that has enforced an indemnification clause under similar circumstances. Instead, "[t]he modern trend is to not enforce indemnity agreements of this type (where the indemnitee holds an innocent party liable for its own negligence) on public policy grounds." *Madsen v. Wyo. River Trips, Inc.*, 31 F.Supp.2d 1321, 1325 (D.Wyo.1999) (refusing to enforce an indemnification clause in an agreement for a river rafting trip, stating that the "unprecedented attempt to hold a private citizen to an indemnity contract for a service that he himself purchased will not stand").

We conclude that the exculpatory and indemnification clauses in the houseboat rental agreement are unenforceable on public policy grounds. We hold that the district court erred when it granted summary judgment. Accordingly, we remand to the district court for further proceedings consistent with our decision.[8]

Reversed and remanded.

8. In response to Xiong's motion to strike certain material in Voyagaire's submissions, we hereby order the following pages stricken from the appendix of respondent Voyagaire Houseboat as material outside the record: pages 5–10, 12–15, 21, and 26–27.