# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1184

_____

| | | |
|---|---|---|
| Douglas R. Myers, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the District |
| v. | * | of Minnesota. |
| | * | |
| Lutsen Mountains Corporation, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: October 22, 2009
Filed: November 25, 2009

_____

Before COLLOTON and BENTON, Circuit Judges, and PIERSOL[1], District Judge.

_____

PIERSOL, District Judge.

Douglas R. Myers ("Myers") appeals an adverse grant of summary judgment. Myers was injured while skiing at Lutsen Mountains, a ski resort operated by Lutsen Mountains Corporation ("Lutsen"). He sued Lutsen, and the district court[2] granted

_____

[1]The Honorable Lawrence L. Piersol, United States District Court for the District of South Dakota, sitting by designation.

[2]The Honorable Raymond L. Erickson, Chief United States Magistrate Judge for the District of Minnesota, to whom the case was referred for decision by consent of the parties pursuant to 28 U.S.C. § 636(c).

Lutsen's motion for summary judgment, holding that a release signed by Myers precluded him from pursuing his claims. This appeal followed. For the reasons set forth below, we affirm the judgment of the district court.

I

We review *de novo* a district court's grant or denial of summary judgment. *Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC,* 519 F.3d 466, 471 (8th Cir. 2008). Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; Fed.R.Civ.P. 56(c).

II

The facts of this case are essentially undisputed. On December 28, 2006, Myers and two of his friends left their homes in Thunder Bay, Ontario, Canada, and drove approximately two hours to Lutsen, Minnesota. The three friends arrived in time to buy ski tickets before 9:30 a.m., when the ski lifts open at Lutsen. Myers has no memory of that day, but he agrees that he purchased a lift ticket and signed a written release of liability waiver. The release includes the following language:

PLEASE READ CAREFULLY BEFORE SIGNING.
THIS IS A RELEASE OF LIABILITY AND WAIVER OF
CERTAIN LEGAL RIGHTS.

I understand that skiing in its various forms, including snowboarding, involves risks, dangers and hazards that may cause serious personal injury or death and that injuries are a common and ordinary occurrence. Risks include, but are not limited to, changes in terrain, weather and snow surfaces, ice, moguls, bare spots, debris, fences, posts, trees, lift equipment and towers, rope tows, light poles, signs, buildings, roads and

walkways, ramps, half-pipes, padded and non-padded barriers, jumps and other terrain features, grooming equipment, snowmobiles, collisions with other persons and other natural and man-made hazards. I acknowledge that the risks in the sport of Alpine skiing can be greatly reduced by taking lessons, abiding by the Skier Responsibility Code, (known as Your Responsibility Code), and using common sense.

In consideration of the purchase of a lift ticket for Lutsen Mountains and use of its facilities, I RELEASE AND FULLY DISCHARGE Lutsen Mountains Corporation, its owners, officers, shareholders, agents and employees from any liability resulting from any personal injury to myself, including death, or damage to my property which is caused by the BREACH OF ANY EXPRESS OR IMPLIED WARRANTY or the NEGLIGENT ACT OR OMISSION of Lutsen Mountains Corporation, its owners, officers, shareholders, agents or employees in the design, location, construction, inspection, maintenance and repair of the conditions on or about the premises or ski area or the operations of the ski area, including but not limited to:

- the design, location, construction, inspection, maintenance and repair of trails, ski runs, slopes, ramps, half-pipes and other terrain features;

- grooming, snow-making, snowmobile operation, ski-lifts, rope tows and ski-lift and rope tow loading and unloading operations;

- padding or non-padding of natural and man-made obstacles and hazards;

- posting or failure to post warnings, signs, fences or other barriers;

- classification and labeling of trails and ski runs; or

- maintaining or modifying variations in the surface, steepness and pitch of trails, ski runs, slopes, ramps and terrain features.

I accept full responsibility for any injuries or damages which may result

from the participation in the sport, and it is my intent to HOLD HARMLESS Lutsen Mountains Corporation, its owners, officers, shareholders, agents or employees for any injury sustained by me, including death, while participating in the sport. I agree not to bring any action or suit against Lutsen Mountains Corporation, its owners, officers, shareholders, agents or employees for any injury or damage.

In accordance with Minnesota law, nothing in this Release of Liability should be construed as releasing, discharging or waiving any claims I may have for reckless or intentional acts on the part of Lutsen Mountains Corporation, or its owners, officers, shareholders, agents or employees.

I HAVE CAREFULLY READ THIS RELEASE OF LIABILITY AND UNDERSTAND ITS CONTENTS. I AM AWARE THAT BY SIGNING THIS RELEASE OF LIABILITY, I AM WAIVING CERTAIN LEGAL RIGHTS, INCLUDING THE RIGHT TO SUE LUTSEN MOUNTAINS CORPORATION, ITS OWNERS, OFFICERS, SHAREHOLDERS, AGENTS OR EMPLOYEES FOR CERTAIN CLAIMS.

CAUTION: READ BEFORE SIGNING!
THIS DOCUMENT AFFECTS YOUR LEGAL RIGHTS
AND WILL BAR YOUR RIGHT TO SUE!

At the bottom of the release, Myers printed his name, signed the document, and listed his age as 32.

At approximately 3:30 p.m. on December 28, 2006, Myers, a self-described expert skier at the time of the accident, was on Lutsen's Lower Meadows trail when he skied over an edge of the course. At oral argument, Myers' counsel indicated that this is an intermediate slope. Myers apparently lofted into an area containing rocks and small trees, and he was injured. He filed a personal injury lawsuit against Lutsen in Minnesota district court based on diversity jurisdiction. The parties filed cross-motions for summary judgment. Concluding that the release Myers signed is valid under Minnesota law, the district court granted Lutsen's motion for summary

judgment and dismissed Myers' complaint with prejudice. On appeal, Myers argues that the district court erred by holding the release is enforceable under Minnesota law.

## III

Minnesota law applies in this diversity case. *See Integrity Floorcovering, Inc. v. Broane-Nutone, LLC*, 521 F.3d 914, 917 (8th Cir. 2008). Exculpatory clauses are enforceable in Minnesota as long as the clause (1) is not ambiguous, (2) does not release intentional, willful, or wanton acts, and (3) does not violate public policy. *See Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 923 (Minn. 1982).

Myers first argues the release is ambiguous because it could be interpreted as waiving Lutsen's liability for all types of claims and not just negligence. We disagree. The language of the release expressly and unambiguously excludes from its coverage claims arising from reckless or intentional acts, and the district court correctly found the release is not ambiguous.

Myers next asserts the release violates public policy because he had no bargaining power; he had to sign the release or not ski at Lutsen. The Minnesota Supreme Court considers two factors to determine whether exculpatory agreements violate public policy: (1) whether there was a disparity of bargaining power between the parties (a compulsion to sign the contract with an unacceptable provision and a lack of ability to negotiate the elimination of that provision), and (2) the type of service being offered or provided through the contract (one who provides a public or essential service is less likely to be exempted from liability for harm caused by negligently providing that service). *See Schlobohm,* 326 N.W.2d at 923. Regarding the first factor, the Minnesota Supreme Court has explained that a disparity of bargaining power does not exist if the offered service is not necessary or if it could have been obtained elsewhere. *See id*. at 925. In *Schlobohm*, the court concluded there was no disparity in bargaining power when Schlobohm voluntarily joined a

fitness center and signed a contract containing an exculpatory clause because there was no showing that the center's services were necessary or that the services could not have been obtained elsewhere. *See id.*

Relying primarily on *Yang v. Voyagaire Houseboats, Inc.*, 701 N.W.2d 783 (Minn. 2005), Myers contends a disparity in bargaining power existed because it would have taken him over two hours to drive from Lutsen to the closest ski hill. In *Yang*, the Minnesota Supreme Court invalidated an exculpatory clause in the context of a houseboat rental agreement. *See id.* at 786. The court suggested there was a disparity in bargaining power because the plaintiff had paid a deposit of "a couple thousand" dollars, had not known about the release until he arrived at the place of business, several hours away from the plaintiff's home, and the next nearest business providing the same services was over 65 miles away, *see id.* at 789 n. 3, but the essential nature of the service was the dispositive factor in the court's conclusion that houseboat rental involves a public interest sufficient to invalidate the exculpatory agreement. *See id.* at 789. *Yang* lends little support to Myers' argument that a disparity of bargaining power existed in this case. As did the Minnesota Supreme Court in *Schlobohm*, we find no disparity of bargaining power because the service provided by Lutsen is not necessary, and Myers could have gone elsewhere to ski.

This brings us to the second factor considered by Minnesota courts to determine whether a release violates public policy: the type of service provided. Myers does not argue that Lutsen provides a public or essential service, and we predict the Minnesota Supreme Court would hold skiing is not a public or essential service. When considering whether a service is public or essential in this context, "courts consider whether it is the type [of service] generally thought suitable for public regulation. Types of services thought to be subject to public regulation have included common carriers, hospitals and doctors, public utilities, innkeepers, public warehousemen, employers and services involving extra-hazardous activities." *Schlobohm*, 326 N.W.2d at 925. In *Schlobohm*, the Minnesota Supreme Court held the services

furnished by the health club are not the type generally thought suitable for public regulation and do not involve an activity of great importance or of practical necessity. *See id.* at 925-26.

*Yang* is instructive on this issue. The Minnesota Supreme Court held the rental company was acting both as a resort and as an innkeeper providing a public service when it offered houseboats for daily and weekly rentals. *See Yang*, 701 N.W.2d at 790. As a matter of public policy, the company could not circumvent its duty to protect guests by requiring them to release the company from liability for its negligence. *See id*. at 791. The court distinguished these types of services from those involving recreational activities which courts generally have held "do not fall within any of the categories where the public interest is involved." *Id.* at 789 (quoting *Schlobohm*, 326 N.W.2d at 925-26). The court specifically rejected the argument that renting houseboats is a purely recreational activity and is not a necessary or public service. *See id.* at 790.

Whether recreational activities involve a public interest is a question the Minnesota Supreme Court has not yet squarely addressed. If the Minnesota Supreme Court has not spoken on an issue, the federal court must determine what decision the state court would make if faced with the same facts and issue. *See Kovarik v. American Family Ins. Group*, 108 F.3d 962, 964 (8th Cir. 1997). The federal court should consider relevant state court decisions, "analogous decisions, considered dicta, . . . and any other reliable data." *Id.* at 964 (quoting *Ventura v. Titan Sports, Inc.*, 65 F.3d 725, 729 (8th Cir. 1995)). The Minnesota Court of Appeals has upheld liability releases in contracts for various types of recreational activities, finding the activities are not of great importance to the public or of practical necessity to anyone. *See*, *e.g.*, *Beehner v. Cragun Corp.*, 636 N.W.2d 821, 828 (Minn. App. 2001) (horseback riding); *Malecha v. St. Croix Valley Skydiving Club, Inc.*, 392 N.W.2d 727, 731 (Minn. App. 1986) (sky diving). We recognize that skiing is an activity enjoyed by many, but we believe the Minnesota Supreme Court would conclude it is not a

necessary or public service and would find the release signed by Myers does not violate public policy.

Finally, we disagree with Myers' arguments that the release is invalidated by two Minnesota statutes, the Plain Language Contract Act and the Consumer Credit Sales Act.

Myers does not contest that the release, if valid, encompasses his claims against Lutsen. The release is valid under Minnesota law and, thus, we affirm the district court's summary judgment for Lutsen.

_____