# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-1588

_____

Haji Azam

*Plaintiff - Appellant*

v.

City of Columbia Heights

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 17, 2016
Filed: July 31, 2017
[Published]

_____

Before BENTON and SHEPHERD, Circuit Judges, and EBINGER,[1] District Judge.

_____

PER CURIAM.

For approximately six months, Defendant–Appellee City of Columbia Heights, Minnesota (the City), directed its police officers to investigate and strictly sanction

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa, sitting by designation.

Plaintiff–Appellant Haji Azam, the owner and landlord of several historically unmanageable rental properties, for violating the City's municipal code. These enforcement efforts included entering Azam's rental buildings, without consent or a warrant, to look for municipal-code violations and citing Azam for all violations discovered. Based in part on these violations, the City revoked the rental licenses authorizing Azam to rent units to tenants. Azam filed an action against the City for its conduct, alleging, among other claims, the City violated 42 U.S.C. § 1983 by subjecting Azam to the deprivation of his rights, privileges, or immunities under the Fourth and Fourteenth Amendments to the United States Constitution. The City filed a motion for summary judgment, and the district court[2] granted the City summary judgment on all of Azam's claims.

Azam appeals only the court's ruling granting summary judgment on Azam's Fourth and Fourteenth Amendment claims. Thus, there are two issues on appeal. First, whether there is a genuine dispute of material fact as to whether the City—by subjecting Azam to the increased enforcement efforts described in greater detail below—violated Azam's substantive-due-process rights under the Fourteenth Amendment. Second, whether there is a genuine dispute of material fact as to whether the City—in entering the rental buildings' common areas, without consent or a warrant, to look for municipal-code violations—violated Azam's Fourth Amendment right to be free from unreasonable governmental searches.

For the following reasons, we affirm the district court. We conclude Azam did not demonstrate, as a matter of law, the City violated his substantive-due-process rights under the Fourteenth Amendment. The City's conduct did not overcome the high standard required for a substantive-due-process claim—that is, its conduct was not arbitrary, oppressive, and shocking to the conscience. Also, in viewing the alleged

---

[2]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

facts in the light most favorable to Azam (as we must do), we conclude there is no genuine dispute of material fact regarding whether the City violated Azam's Fourth Amendment rights. Azam did not have a reasonable expectation of privacy in the common spaces entered by the City's police officers. Any argument that the police officers may have physically intruded on constitutionally protected areas by trespassing in Azam's buildings to search for incriminating evidence was waived. We address each claim in turn.

## I. *Background*

We recount the facts in the light most favorable to the non-moving party. *See Myers v. Lutsen Mountains Corp.*, 587 F.3d 891, 893 (8th Cir. 2009).

From September 2013 to January 2014, the City directed its police officers to conduct weekly investigations of Azam's rental buildings. The police officers allegedly entered Azam's buildings (even if they were locked), looked for violations of the City's municipal ordinances, and cited Azam for any violations they found. Through these investigations, the City cited Azam numerous times for municipal-code violations, far more frequently than it did for other rental-property owners in the city. Based on these citations and the recurring, significant problems at Azam's properties, the City revoked Azam's rental licenses.

During the relevant time period, Azam owned five apartment buildings in Columbia Heights, Minnesota. These apartment buildings included one 4-unit building on Pierce Street, two 7-unit buildings on Tyler Street, and two 11-unit buildings on University Avenue. To lease the units in his buildings to tenants, Azam acquired and maintained a rental license for each building, as was required by the Columbia Heights municipal code. *See* Columbia Heights, Minn., Property Maintenance Code (Property Code) § 5A.401(A).

According to the City, Azam's rental properties experienced "an inordinate amount of crime and calls for service" beginning in 2009. In an e-mail dated May 23, 2009, Columbia Heights Police Chief Scott Nadeau notified Police Sergeant Matt Markham of the City's complaints regarding Azam's rental properties. Chief Nadeau commented that one of Azam's Tyler Street properties "looks like it continues to be a problem" and that the City should "start to try and document the insanity on that property and in the neighborhood for when (not if) we try to pull the license." From 2009 to 2013, Azam and City officials communicated regarding issues with his properties in person at least twenty-two times and via phone, e-mail, and letter numerous other times. According to Columbia Heights Police Captain Lenny Austin, Azam failed to address the problems at his rental properties and the City "ha[d] not had other rental properties that ha[d] risen to the level of calls for service and criminal activity compared to [Azam's] properties."

The Columbia Heights municipal code grants the City various powers to deal with properties, including rental properties, that violate the City's housing, nuisance, and safety ordinances. For example, the Columbia Heights City Council may revoke a rental license when it determines the rental property does not comply with the Property Code. Property Code § 5A.408(A)–(B). Also, when two or more rental licenses of the same property owner have been revoked, the property owner is ineligible to hold a Columbia Heights rental license for a period of five years, and thus, any rental license the property owner holds is revoked. *Id.* § 5A.408(E). The City also may impose a "nuisance call" fee when the City responds to three or more nuisance calls regarding the same property within one year. Columbia Heights, Minn., Public Health and Safety Code (Safety Code) § 8.804(a). Finally, although not established in the Columbia Heights municipal code, the City sometimes enters into a "mitigation plan" with an owner of a rental property experiencing significant criminal activity. Through a mitigation plan, the City recommends certain actions intended to alleviate those issues.

Azam and the City entered into mitigation plans in 2009 for Azam's Tyler Street properties and in 2010 for his University Avenue properties. Azam implemented the mitigation plans' recommendations. According to Captain Austin, other rental-property owners who had implemented mitigation plans both lowered the levels of criminal activity at their properties and maintained those lower levels. But with Azam's properties, Captain Austin stated, the mitigation plans helped lower the amount of criminal activity only initially, before it again increased.

On September 18, 2013, Captain Austin sent a memorandum to the City's police officers, notifying them of additional efforts to address problems at Azam's buildings. Captain Austin directed the police officers to investigate the buildings each week and look for municipal-code violations involving "security, safety and health issues." Captain Austin later told the officers that if they were unable to enter the buildings, they should use the buildings' emergency fire keys to unlock the exterior doors and enter. The City did not obtain a warrant to search the properties, nor does it assert it had consent to enter Azam's buildings or conduct the investigations. Although the City's police department conducted this type of investigation at other properties in the past, the police department had not done so on a weekly basis. The police department conducted its investigations of Azam's buildings on a weekly basis, Captain Austin explained, because no other property had experienced "the level of calls for service and criminal activity compared to [Azam's] properties." Captain Austin also stated rental-property investigations were customarily handled by the fire department, rather than the police department.[3]

From September 15, 2013, through December 22, 2013, the City's police officers cited Azam ten times for a total of thirteen violations associated with his

---

[3]The Property Code provides: "The City Manager and his designated agents shall be the Property Maintenance Enforcement Officer who shall administer and enforce the provisions of the chapter." Property Code § 5A.301.

rental properties.[3] Azam received seven violations for failing to have compliant security doors, two violations for failing to secure laundry-room doors, three violations for failing to have smoke detectors, and one violation for failing to promptly remove snow accumulation. Three of the citations, though it is unclear which, occurred while fire- or police-department personnel were in Azam's buildings for emergency or unrelated calls. It appears some of the violations—such as the violation for failing to remove snow—did not require entry into the interior of the property. Azam also paid the City for numerous nuisance-call fees.

In January 2014, the City's fire and police chiefs sent Azam a letter notifying him the City Council would meet on March 24, 2014, to discuss the problems at his properties. They also informed Azam they would advise the City Council not to renew his rental licenses for his University Avenue properties.

The hearing regarding Azam's University Avenue properties commenced on March 24, 2014, as scheduled. The City's staff recommended revoking Azam's rental licenses for these properties "due to a disproportionate amount of police calls, criminal activity and nuisance violations at Azam's properties." At the end of the hearing, the City Council revoked Azam's rental licenses for his University Avenue properties. The day after the hearing, Captain Austin sent the City's police officers a memorandum cancelling the weekly investigations of Azam's rental properties.

On April 17, 2014, Azam sold his University Avenue and Tyler Street properties.

Despite the fact Azam had sold his Tyler Street properties, the City Council held a hearing regarding those properties and Azam's Pierce Street property on April 28, 2014. The City's staff recommended revoking Azam's rental licenses for these

---

[3]A Minnesota state court dismissed all of the citations.

properties. At the end of the hearing, the City Council revoked Azam's rental licenses for the Tyler Street properties. The City Council then revoked Azam's remaining rental license—for his Pierce Street property—pursuant to Property Code section 5A.408(E), because the City Council had revoked at least two of Azam's rental licenses and, therefore, he was not eligible to hold a Columbia Heights rental license for five years. According to the lower court's findings, Azam's rental licenses appear to be the only rental licenses the City Council revoked based upon a "'[p]ersistent [and] disproportionate number of police calls, criminal activity,' and generically titled 'housing code violations.'"

On June 13, 2014, Azam sold his Pierce Street property. He no longer owns any property in Columbia Heights, Minnesota.

On March 24, 2014 (the same day as the first City Council hearing on Azam's properties), Azam filed a complaint against the City. Azam alleged the City had violated: 1) 42 U.S.C. § 1983, by infringing his Fourth and Fourteenth Amendment rights; and 2) the Fair Housing Act and various federal statutes, by infringing his rights to be free from unlawful discrimination. Azam also requested declaratory judgment and injunctive relief. The City filed a motion for summary judgment on all claims, which Azam resisted. The district court concluded there was no genuine dispute of material fact and Azam failed to produce evidence showing, as a matter of law, the City: 1) subjected Azam to unlawful discrimination in violation of the Fair Housing Act and the other federal statutes; 2) invaded a constitutionally protected area or an area where Azam held a reasonable expectation of privacy in violation of the Fourth Amendment; or 3) violated Azam's substantive-due-process rights in violation of the Fourteenth Amendment. The district court also denied Azam's request for declaratory judgment and injunctive relief.

Azam timely filed a notice of appeal. On appeal, Azam challenges only the district court's ruling granting summary judgment to the City on Azam's Fourth and Fourteenth Amendment claims. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. *Standards of Review*

When considering a motion for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden to make this showing. *Id.* In considering the sufficiency of the record, we view it "in the light most favorable to the non-moving party." *Myers*, 587 F.3d at 893.

## III. *Discussion*

Azam appeals two rulings from the district court's order. First, Azam challenges the district court's ruling granting the City summary judgment on Azam's claim the City violated his substantive-due-process rights through its increased enforcement efforts against Azam for municipal-code violations. Second, Azam appeals the district court's ruling granting the City summary judgment on Azam's claim the City violated his Fourth Amendment rights by entering the common areas of his rental properties without a warrant to look for municipal-code violations. Azam's claims for alleged constitutional violations are based on 42 U.S.C. § 1983, which establishes a cause of action against a person[4] who, under color of law,

---

[4]The Supreme Court has held, "Local governing bodies," including municipalities, "can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 690 (1978).

"subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

## A. *Fourteenth Amendment Claim*

Azam claims the City violated his Fourteenth Amendment rights when it, "under color of law, engaged in a pattern of arbitrary and oppressive police behavior targeting his properties and holding him liable without notice for the acts of his tenants with the intent to force him out of business." Azam argues the district court erred in dismissing his Fourteenth Amendment claim because a "reasonable jury could conclude . . . [the City] acted with deliberate indifference to Mr. Azam's rights, in a way that was arbitrary and oppressive and shocks the conscience, and that it should be held liable for its actions." We must determine whether the district court properly granted summary judgment on this claim.

This Court has repeatedly emphasized the high burden facing a person who claims a violation of his or her Fourteenth Amendment rights. To demonstrate the government violated a person's substantive-due-process rights, the claimant must show evidence of "a constitutionally protected property interest and that [governmental] officials used their power in such an arbitrary and oppressive way that it 'shocks the conscience.'"[5] *Entergy, Ark., Inc. v. Nebraska*, 241 F.3d 979, 991 (8th Cir. 2001) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998)). In doing so, the claimant must show "more than that the government decision was

---

[5]Azam contends the City "never challenged—and the court below never held—[Azam] does not have a constitutionally protected interest in the use of his properties and the rental licenses for the apartment buildings he owned." The City does not dispute this assertion. We therefore assume Azam had a constitutionally protected property interest.

arbitrary, capricious, or in violation of state law." *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104 (8th Cir. 1992). Rather, the allegations must demonstrate, in part, a "truly irrational" governmental action, such as "attempting to apply a zoning ordinance only to persons whose names begin with a letter in the first half of the alphabet." *Id.* "The government action must be arbitrary in the constitutional sense." *Rozman v. City of Columbia Heights*, 268 F.3d 588, 593 (8th Cir. 2001) (en banc) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992)). "[T]he theory of substantive due process," we have noted, "is properly reserved for truly egregious and extraordinary cases." *Chesterfield Dev. Corp.*, 963 F.2d at 1105. Such a case must be so abusive as to be "offensive to human dignity." *See New v. City of Minneapolis*, 792 F.2d 724, 726 (8th Cir. 1986).

This Court's opinion in *Gallagher v. Magner* is instructive. 619 F.3d 823 (8th Cir. 2010). In *Gallagher*, the city of St. Paul, Minnesota, increased its enforcement efforts on certain categories of housing. *Id.* at 829. The city targeted all rental properties because a city official overseeing housing-code enforcement "favored owner-occupied housing over rental housing 'for the sake of the neighborhood.'" *Id.* These enforcement efforts included "sweep[ing]" rental properties to find and cite for housing-code violations, citing every violation officials could find at not only rental properties reported to officials but also all nearby rental properties, and requiring numerous rental-property owners to undertake expensive renovations of their rental properties. *Id.* at 829–30. This Court held, "In light of the uncontested legitimate goals of enforcing the Housing Code, there is insufficient evidence to reasonably conclude that this is a 'truly egregious and extraordinary' example of government regulation." *Id.* at 840.

Our opinion in *Rozman v. City of Columbia Heights* also guides our analysis. 268 F.3d 588. In *Rozman*, the city of Columbia Heights, Minnesota, revoked a landlord's rental licenses after he refused to schedule city inspections of his rental units. *Id.* at 590. The en banc court held that, even assuming the City had

misinterpreted the municipal code when revoking the landlord's rental licenses: "While the action of the City towards [the landlord] . . . may not have complied with the provisions of the law as it may ultimately be interpreted, that action certainly did not rise to the level of a constitutional violation of substantive due process." *Id.* at 593.

Here, Azam claims the City violated his substantive-due-process rights through its "pattern of arbitrary and oppressive police behavior targeting his properties and holding him liable without notice for the acts of his tenants with the intent to force him out of business—eventually succeeding." In support of this claim, Azam advances four arguments: 1) the nuisance-call fees were imposed in an arbitrary manner; 2) the City's increased enforcement efforts were an oppressive use of its police power; 3) the City showed deliberate indifference to Azam's rights; and 4) the City's actions shock the conscience. We disagree with these contentions. We conclude Azam has failed to demonstrate, as a matter of law, the City engaged in arbitrary, oppressive conduct that shocks the conscience.

First, the City did not impose its nuisance-call fees in an arbitrary manner. In support of this claim, Azam contends the City "arbitrarily cho[se] to treat all buildings the same, whether single-family dwellings or Mr. Azam's 11-family apartment buildings" and it "h[eld] Mr. Azam responsible, not only for the actions of his tenants on his property, but the actions of his tenants when not at Azam's rental properties, or even the actions of non-residents on his property." The municipal ordinance establishing nuisance-call fees expressly declares the purpose of such fees is to "protect the public safety, health and welfare and to prevent and abate repeat service response calls by the city *to the same property or location* for nuisance service calls . . . which prevent police or public safety services to other residents of the city . . . [and] that generate[] extraordinary costs to the city." Safety Code § 8.801 (emphasis added). By imposing these fees, the City seeks to forgo City officials from having to repeatedly respond to troublesome properties—regardless of the number of

units—to address nuisance violations. By imposing these fees, the City was not acting in an arbitrary manner.

Second, the City's increased enforcement efforts against Azam were not an oppressive use of its police power. Azam claims the City intended to and succeeded in revoking his rental licenses through its enforcement efforts. But the record reflects approximately four years of housing and safety problems at Azam's rental properties, and efforts by the City to remedy these problems. The City alleges it increased its enforcement efforts at Azam's rental properties because of the persistent, disproportionate housing- and safety-code problems at the properties. The City's enforcement efforts against Azam were, as the City asserts, "for the legitimate purpose of protecting the health, safety, and welfare of residential tenants." For example, the City points to an incident where a handgun was recovered from a baby's crib as an incident leading "the City to believe more effective measures were necessary to protect citizens living in Azam's buildings." In support of his argument, Azam highlights the fact that the City's police officers discontinued their enforcement efforts at Azam's rental properties after he sold the rental properties. This, too, the City explained, stating it "stop[ped] the walkthroughs to provide the new owner an opportunity to improve conditions at the apartment complexes without additional enforcement measures." Even accepting Azam's assertion the City intended to revoke his rental licenses, the City's actions were not an oppressive use of its police power.

Third, Azam has failed to show the City acted with deliberate indifference to Azam's constitutional rights. In support of this claim, Azam asserts many of the same arguments discussed above. This claim fails for the same reasons—the City did not act in an arbitrary, oppressive manner. Additionally, although a municipality can be liable under 42 U.S.C. § 1983 for failing to adequately train its police officers "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact," *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), there is no evidence of such a violation here.

Fourth, Azam's claim does not overcome the high standard required for the last element of a substantive-due-process claim—i.e., that the City's actions shock the conscience. It does not shock the conscience that the City increased its enforcement efforts at properties with persistent, significant criminal conduct, nuisance violations, and Property Code violations; that the City issued nuisance-call fees to Azam after repeatedly responding to his rental properties for nuisance calls; or that the City cited Azam for nuisance violations by his tenants or by non-residents at the rental properties. Simply put, the City's actions do not shock the conscience.

The government, by oppressively and arbitrarily imposing its police power on a person, can violate that person's substantive-due-process rights. *See Rochin v. California*, 342 U.S. 165, 209–10 (1952). But the City's use of its powers to deal with historically unmanageable properties—even in the manner Azam alleges—does not rise to the level of a Fourteenth Amendment violation. We therefore affirm the district court's ruling granting the City summary judgment on Azam's Fourteenth Amendment claim.

## B. *Fourth Amendment Claim*

Azam contends the district court erred in dismissing his Fourth Amendment claim. The district court held the City did not, as a matter of law, violate Azam's Fourth Amendment rights, concluding Azam did not have a reasonable expectation of privacy in the rental properties' common areas and the City did not intrude on a constitutionally protected area. The question now before the Court is whether there is a genuine dispute of material fact as to whether Azam had a reasonable expectation of privacy that was violated.[6]

---

[6]The Supreme Court has also expounded a property-rights paradigm for analyzing whether a Fourth Amendment search occurred. The property-rights paradigm is largely based on the "trespass test." Under this test, a Fourth Amendment

The Fourth Amendment prohibits the government from conducting unreasonable searches and seizures. U.S. Const. amend. IV. It provides, in pertinent part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." *Id.* It is well established the Fourth Amendment protects a person in his home[7] and place of business. *See Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312 (1978) (concluding, based on the Fourth Amendment's history, "it is untenable that the ban on warrantless searches was not intended to shield places of business as well as of residence"); *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 353 (1977) ("The respondents do not contend that business premises are not protected by the Fourth Amendment. Such a proposition could not be defended in light of this Court's clear holdings to the contrary."); *See v. City of Seattle*, 387 U.S. 541, 546 (1967) ("We hold only that the basic component of a reasonable search under the Fourth Amendment—that it not be enforced without a suitable warrant procedure—is applicable in this context, as in

---

search occurs when the government trespassers or "physically intrud[es] on a constitutionally protected area." *Grady v. North Carolina*, 135 S. Ct. 1368, 1370 (2015) (per curiam) (quoting *United States v. Jones*, 565 U.S. 400, 406 n.3 (2012)). The district court noted: "The parties did not discuss whether the search intruded on a constitutionally protected area under" *Jones*, thus "Azam must rely on the reasonable expectation of privacy standard." Because Azam does not put forth any argument challenging this determination, he has waived appellate review of his Fourth Amendment claim under the property-rights paradigm. *See Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004).

[7]Azam concedes he never lived in any of the rental properties at issue here. We therefore conclude Azam is not entitled to the Fourth Amendment protections afforded a person in his or her home. *See Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013) ("At the [Fourth] Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)).

others, to business as well as to residential premises."); *see also Michigan v. Clifford*, 464 U.S. 287, 291–92 (1984) ("Except in certain carefully defined classes of cases, the nonconsensual entry and search of property is governed by the warrant requirement of the Fourth . . . Amendment[]." (footnote omitted)); *Donovan v. Dewey*, 452 U.S. 594, 598 (1981) ("[T]he Fourth Amendment's prohibition against unreasonable searches applies to administrative inspections of private commercial property.").

The Supreme Court has interpreted the Fourth Amendment as proscribing unreasonable searches that intrude upon a person's reasonable expectation of privacy. *Bond v. United States*, 529 U.S. 334, 338–39 (2000); *see United States v. Jones*, 565 U.S. 400, 406 (2012); *see also United States v. DE L'Isle*, 825 F.3d 426, 431 (8th Cir. 2016). Under this test, a party asserting a violation of his or her reasonable expectation of privacy must show both: 1) "an actual (subjective) expectation of privacy," and 2) "that the expectation [is] one that society is prepared to recognize as 'reasonable.'" *DE L'Isle*, 825 F.3d at 431 (alteration in original) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)); *accord Bond*, 529 U.S. at 338. Based on the reasonable-expectation-of-privacy test, this Court held a resident of an apartment building did not have a reasonable expectation of privacy in the common areas, including the hallways, of the building. *United States v. Eisler*, 567 F.2d 814, 816 (8th Cir. 1977); *see also United States v. McGrane*, 746 F.2d 632, 634–35 (8th Cir. 1984) (holding the defendant did not have a reasonable expectation of privacy in his storage locker, kept in the basement of his apartment building, that was accessible to the building's residents and landlord). Our sister circuits similarly held, under analogous fact patterns, that no such reasonable expectation of privacy existed. *See, e.g., United States v. Correa*, 653 F.3d 187, 190–91 (3d Cir. 2011); *United States v. Villegas*, 495 F.3d 761, 767–69 (7th Cir. 2007); *United States v. Dillard*, 438 F.3d 675, 682–83 (6th Cir. 2006); *United States v. Ramirez*, 145 F. App'x 915, 922–23 (5th Cir. 2005); *United States v. Miravalles*, 280 F.3d 1328, 1331–33 (11th Cir. 2002); *United States v. Hawkins*, 139 F.3d 29, 32–33 (1st Cir.

1998); *United States v. Nohara*, 3 F.3d 1239, 1241–42 (9th Cir. 1993); *United States v. Barrios-Moriera*, 872 F.2d 12, 14–15 (2d Cir. 1989), *abrogated on other grounds by Horton v. California*, 496 U.S. 128 (1990).

This Court has not had occasion to determine whether an owner or landlord of a multi-unit dwelling has a reasonable expectation of privacy in the common areas—including the interior hallways and laundry rooms—of the dwelling. We conclude Azam did not have a reasonable expectation of privacy in the common areas of his rental buildings because he did not maintain a subjective expectation of privacy regarding information in these areas, nor would any such expectation have been objectively reasonable.

First, Azam did not demonstrate he had a subjective expectation of privacy regarding information within the common areas of his rental buildings. Although Azam owned the rental buildings, he has not posited sufficient facts to demonstrate he had an actual, subjective expectation of privacy in the common areas of his buildings. *See, e.g.*, *Dow Chem. Co. v. United States*, 476 U.S. 227, 237 & n.4 (1986) (discussing the alleged facts purportedly evincing a subjective expectation of privacy); *California v. Ciraolo*, 476 U.S. 207, 211–12 (1986) (same). The common areas to these rental buildings were behind doors with locks. But Azam does not assert he used the locked doors to safeguard certain intimate information from "the intruding eye . . . [or] the uninvited ear." *Katz*, 389 U.S. at 352; *cf. McGrane*, 746 F.2d at 634–35. Azam therefore has not demonstrated he had a subjective expectation of privacy.

Second, even assuming Azam had a subjective expectation of privacy regarding information exposed in the common areas of his rental properties, that expectation of privacy would not have been objectively reasonable. The common areas in each rental building were accessible and available to that building's residents, the residents' guests, any of Azam's agents, and others legally passing through with an express or

-16-

implicit license (e.g., canvassers, solicitors, mail-carriers, and more). *See Florida v. Jardines*, 133 S. Ct. 1409, 1415 (2013). Therefore, any subjective expectation of privacy regarding information in the common areas that Azam sought to keep private—relevant here, evidence of municipal-code violations—would not have been objectively reasonable. Society would not be willing to endorse as objectively reasonable Azam's purported privacy interest in the rental buildings' common areas, high-traffic areas that, based on the record, Azam did little to protect or oversee. This Court already concluded a tenant of an apartment building did not have a reasonable expectation of privacy in the common areas of the building. *See, e.g.*, *McGrane*, 746 F.2d at 634–35; *Eisler*, 567 F.2d at 816. We similarly conclude any subjective expectation Azam could have demonstrated would not have been objectively reasonable.

The judgment is affirmed.

_____