NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0942n.06
Filed: November 30, 2005

No. 04-4418

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| $110,873.00 IN U.S. CURRENCY, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant, | ) | |
| | ) | |
| CHERYL SINGLETARY, administratrix of | ) | |
| the estate of BARRY JOSEPH, deceased, | ) | |
| | ) | |
| Claimant-Appellant. | ) | |
| | ) | |

Before: MERRITT, MOORE and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Cheryl Singletary, the administratrix of Barry Joseph's estate, appeals the district court's grant of summary judgment in favor of the government in an action seeking the forfeiture of $110,873 in U.S. currency. Because we agree with the district court that the government is entitled to judgment as a matter of law in this case, we affirm.

A.

At 3:20 a.m. on Wednesday, May 22, 2002, two Cleveland police officers spotted a pickup truck parked in a driveway with its engine running. When they approached the vehicle, they saw a man later identified as Barry Joseph asleep in the fully-reclined driver's seat. The officers tapped on the vehicle's windows for several minutes before Joseph awoke. When Joseph lowered his window, the officers smelled marijuana. Joseph appeared "dazed and confused" as he exited the vehicle, and one of the officers smelled marijuana on his breath. JA 88. As one of the officers began to pat down Joseph for weapons, he asked Joseph if he "had anything I should know about." *Id.* "[Y]a[,] some weed," Joseph replied, at which point the officers recovered a plastic sandwich bag containing 11.89 grams of marijuana from his pocket. *Id.* The officers arrested Joseph.

An inventory search of the vehicle uncovered $110,873 in two plastic bags on the floor behind the driver's seat. The money was rubber banded together in thousand-dollar (or so) bundles. The police took Joseph to the police station, where a drug-detecting dog alerted to the currency, which federal agents eventually seized.

This incident, as it turns out, was neither Joseph's first nor last encounter of this sort with the police. *Before* the May 2002 incident, on December 14, 2000, police officers stopped Joseph to issue a citation for playing loud music in a parked running vehicle. In response to the officers' request for proof of insurance, Joseph opened the car's glove box, revealing two large bags of marijuana in the compartment. The officers arrested Joseph. An inventory search of the car

produced two more bags of marijuana and $23,711 in currency. The officers also found $4,192 in currency and another small bag of marijuana on Joseph, bringing the total amount of drugs found that day to 104.57 grams. Joseph forfeited the $4,192 the officers found on him to the federal government and pled guilty to attempted preparation of drugs for sale in violation of Ohio law. The government filed a forfeiture action against the $23,711 found in the car and settled with a third party who claimed to own the currency by agreeing to return $2,500 to the individual. The remaining currency ($21,211) was forfeited as drug proceeds under 21 U.S.C. § 881(a)(6).

*After* the May 2002 incident, on September 1, 2002, Pennsylvania state troopers stopped a speeding vehicle in which Joseph was a passenger. Joseph and the other occupants of the car consented to a search of the vehicle, and Joseph eventually consented to a search of his person. His pockets contained $15,397 in rubber-banded bundles. An officer counting the money observed that several of the bundles held $1,350, the average price (he noted) of a pound of marijuana. A drug-detecting dog alerted to the money, after which the State filed a forfeiture petition against the currency.

B.

On October 24, 2002, the United States filed a forfeiture complaint against the $110,873 in U.S. currency found during the May 2002 incident, describing the above facts and asserting that Joseph did not file any Ohio income tax returns from 1994 to 2000. Joseph answered the complaint and filed a claim to recover the seized property. During discovery, in response to the government's

interrogatories about his work history and how he obtained the $110,873, Joseph invoked his Fifth Amendment rights.

On June 13, 2003, Joseph died (apparently as a result of multiple gunshot wounds), and the court ordered his estate's administratrix, Singletary, substituted as the claimant. On October 6, 2004, the district court granted the government's motion for summary judgment, after which Singletary filed this timely appeal, which we review de novo. *United States v. $174,206.00 in U.S. Currency*, 320 F.3d 658, 660 (6th Cir. 2003).

## II.

Under the Civil Asset Forfeiture Reform Act of 2000, "moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance . . . [and] all proceeds traceable to such an exchange" are "subject to forfeiture to the United States and no property right shall exist in them." 21 U.S.C. § 881(a). Applying that provision here, the district court determined that there was no material fact dispute regarding the required nexus between the currency and drug-distribution activity, relying upon the absence of evidence of legitimate income that could explain the possession of this currency and relying upon Joseph's other drug-related arrests. *See* D. Ct. Op. at 7–8 (citing *$174,206.00 in U.S. Currency*, 320 F.3d at 662 and *United States v. $118,170.00 in U.S. Currency*, No. 01-4104, 2003 U.S. App. LEXIS 14104, at *3 (6th Cir. July 9, 2003)). The district court made two other pertinent rulings. It determined that the officers did not violate Joseph's Fourth Amendment rights during the encounter because they had a reasonable basis for approaching him

(he was sleeping in an idling car at 3:20 in the morning) and because they had probable cause to search and seize his car (he was in possession of marijuana). *See id*. at 7 (citing *$118,170.00 in U.S. Currency*, 2003 U.S. App. LEXIS 14104, at *2). And it determined that while Joseph was entitled to invoke his Fifth Amendment rights to avoid answering the government's interrogatories, he was not entitled to leverage that right into a basis for avoiding the requirements of Rule 56—that he set forth information showing a genuine issue of material fact that justifies denying summary judgment. *See id*. at 9–10 (citing *$118,170.00 in U.S. Currency*, 2003 U.S. App. LEXIS 14104, at *4).

## A.

Joseph's estate initially challenges the validity of the officers' seizure of the currency. The challenge is unavailing. The officers had ample reason to stop and question Joseph: He was asleep in an idling car in the middle of the night. They had probable cause to detain him and search his car: He acknowledged possessing marijuana. And they had probable cause to seize the currency found in the car: He not only possessed an unusual amount of currency and possessed a user's amount of marijuana but a drug-sniffing dog also alerted to the currency. *See* 18 U.S.C. § 981(b)(2)(B); *$118,170.00 in U.S. Currency*, 2003 U.S. App. LEXIS 14104, at *5–7 (a seizure is proper where the facts include "the presence of marijuana," a "large amount of money found in" the stopped vehicle and an alert to the currency by a drug-detecting dog).

## B.

Joseph's estate next argues that even if the initial seizure was lawful, the government did not meet its burden of proof under the Civil Asset Forfeiture Reform Act to make the seizure permanent. Under the Act, the government must prove "by a preponderance of the evidence" that the currency "is subject to forfeiture," 18 U.S.C. § 983(c)(1), a burden that may be satisfied by showing "that the property is traceable to [ ] drug offenses and is thus subject to forfeiture under 21 U.S.C. § 881(a)(6)." *$174,206.00 in U.S. Currency*, 320 F.3d at 662. The government satisfied that burden by presenting the following evidence: an unusually large amount of currency; no state income tax returns from 1994 to 2002; the presence of drugs at the scene; an alert by a drug-detecting dog to the currency; and two other incidents involving Joseph, one involving the presence of well more than a user's amount of drugs, the other involving currency to which a drug-detecting dog alerted. Under our cases, the cumulation of this evidence satisfies the government's burden of establishing a connection between the currency and drug offenses. *See id*; *$67,220.00 in U.S. Currency,* 957 F.2d 280, 286 (6th Cir. 1992); *United States v. Veggacado*, No. 01-3544, 2002 U.S. App. LEXIS 11960, at *4–6 (6th Cir. June 14, 2002).

In reaching this conclusion, we agree with Joseph's estate that "possession of large amounts of cash" is not "*per se* evidence of drug activity." Joseph Br. at 13 (citing *United States v. $31,990.00 in U.S. Currency*, 928 F.2d 851, 854 (2d Cir. 1993)). But here, as shown, the government did conspicuously more than just show that the officers found a lot of money in Joseph's car.

C.

The estate next argues that the district court "penalized" Joseph for asserting his Fifth Amendment rights in response to the government's interrogatories. Whether one's metaphor of choice is shields and swords or parries and thrusts, the point is the same: A litigant may not invoke the Fifth Amendment to avoid answering questions in discovery, then cry foul when the absence of evidence in favor of the litigant requires summary judgment to be entered against him. In this case, Joseph invoked the Fifth Amendment when the government asked him how he came about the $110,873 and what his work history had been. When the government subsequently filed a motion for summary judgment regarding the forfeiture petition, Joseph did not attempt to introduce any evidence from himself or anyone else about the source of the money. Under these circumstances, the district court did not "penalize" Joseph for exercising his Fifth Amendment rights. Joseph had an opportunity to present his side of the case, and he simply chose to remain silent—a perfectly constitutional option but one that he may not leverage into a basis for avoiding the requirements of Rule 56 of the Federal Rules of Civil Procedure. *See $174,206.00 in U.S. Currency*, 320 F.3d at 662; *United States v. Certain Real Property 566 Hendrickson Boulevard*, 986 F.2d 990, 996 (6th Cir. 1993) (A "[c]laimant cannot avoid completely his Rule 56 burden by merely asserting a Fifth Amendment privilege.").

D.

Appellant lastly argues that the government circumvented its "Asset Adoption Forfeiture

Policy." The argument proceeds from the following premises—the police officers "simply called the DEA, told them about these funds and turned the funds they told Barry Joseph were being held as evidence over to the federal agents"—and ends with the following conclusion—"[s]urely, this cannot be right." Joseph Br. at 17. The record, as an initial matter, offers no indication that "the DEA" had any involvement in this case. After Cleveland police officers arrested Joseph, they had his car towed to the police station; they notified FBI and IRS special agents, who responded with a drug-detecting dog; the dog alerted to the currency; and the agents seized the currency for federal forfeiture.

Even assuming appellant means to refer to the federal agents who were involved in this seizure, the argument remains unconvincing. To the extent Joseph's estate invokes *United States v. One 1985 Cadillac Seville*, 866 F.2d 1142, 1145–46 (9th Cir. 1989), to support a challenge to this court's jurisdiction "because the State court had jurisdiction over the funds when they were turned over to the Federal Agents," Joseph Br. at 16–17, the estate has failed to demonstrate that a state court ever had jurisdiction over the defendant currency before the federal court assumed jurisdiction over it. *See United States v. $134,920 in U.S. Currency*, No. 93-5365, 1994 U.S. App. LEXIS 14414, at *8 (6th Cir. June 8, 1994) (holding that "where the federal court is the only court attempting to exercise in rem jurisdiction over property and the state never institutes a forfeiture action, the federal court's exercise of jurisdiction is proper"). And to the extent the estate claims that the government violated its procedures for obtaining authority over the currency from local authorities, it has not only failed to provide us with these procedures and failed to explain how the

government did not follow them, it also has neglected to explain the benefit it would gain if a violation occurred. Given the failure to develop this argument and given the fact that other courts have held that Department of Justice policy directives are not binding and do not create privately enforceable rights, *see, e.g.*, *Arango v. U.S. Dep't of the Treasury*, 115 F.3d 922, 927 (11th Cir. 1997); *cf. United States v. Wilson*, 413 F.3d 382, 389 (3d Cir. 2005); *United States v. Craveiro*, 907 F.2d 260, 264 (1st Cir. 1990); *United States v. Loften*, 518 F. Supp. 839, 857 (S.D.N.Y. 1981), *aff'd*, 819 F.2d 1130 (2d Cir. 1987); *United States v. Thompson*, 579 F.2d 1184, 1189 (10th Cir. 1978), we reject appellant's final claim.

III.

For these reasons, we affirm.