UNITED STATES of America,
Plaintiff,

v.

$61,200.00 IN U.S. CURRENCY, MORE
OR LESS, Defendant.

No. 1:09–cv–00029–JAJ–TJS.

United States District Court,
S.D. Iowa,
Western Division.

June 22, 2010.

Maureen McGuire, U.S. Attorney's Office, Des Moines, IA, for Plaintiff.

## ORDER

JOHN A. JARVEY, District Judge.

This matter comes before the Court pursuant to Plaintiff United States of America's May 17, 2010, motion for summary judgment. [Dkt. No. 17.] The claimant, Brian Szymczak, responded to the government's motion for summary judgment on June 1, 2010 [Dkt. Nos. 18 & 19] and the government replied on June 8, 2010. [Dkt. No. 20.] The government filed a Verified Complaint for Forfeiture in Rem on August 31, 2009 and the claimant responded by filing a Verified Claim and Answer. [Dkt. Nos. 1, 5, & 6.] The claimant asserts that he is the rightful owner of the defendant money and that it is unrelated to any drug activity. The Court denies the motion for summary judgment.

### I. BACKGROUND

On February 25, 2009, Iowa State Patrol Officer Jerod Clyde made a routine traffic stop of a white van traveling west on Interstate 80 in Pottawattamie County, Iowa.[1] The van was a 2006 GMC Savana 2500 with California license plate # 7V65106. The lone occupant and driver of the vehicle was Brian Lee Szymczak, 61 years old, of Sebastopol, California. Szymczak was also the registered owner of the vehicle. When questioned as to the purpose of his travel, Szymczak told Officer Clyde that he had been in Michigan. He was traveling back to California after visiting friends and relatives. While in Michigan, he had been spending money to winterize his residence, a pole barn.

Officer Clyde smelled marijuana emitting from the vehicle. Officer Clyde ques-

1. The following facts are either undisputed or are viewed in the light most favorable to claimant, the party resisting the motion for summary judgment.

tioned Szymczak if he had any marijuana in the vehicle, but Szymczak denied it. Szymczak then admitted that he had several joints but that he had a valid California prescription for marijuana. The marijuana prescription had expired one month earlier, in January 2009. Officer Clyde asked Szymczak whether he had large amounts of cash in the car, but Szymczak denied it. After reconsidering Officer Clyde's question, Szymczak stated that he had approximately $60,000 in the vehicle. To explain the large sum of money, Szymczak told Officer Clyde that he had been planning to install a safe at the pole barn in Michigan and had brought his life savings from California in anticipation of his move. However, because the ground was frozen he decided to return to California until the ground thawed. He also said he had rented a vehicle in Michigan from February 9 through February 23, 2009. He put 3240 miles on the rental vehicle to drive around and visit relatives.

Szymczak then gave Officer Clyde consent to search the vehicle, both for the marijuana and the money. Officer Clyde found a total of $61,200 in U.S. Currency and it was located

> ... in three separate areas of the van. The first area was a tool bag with some wiring and just miscellaneous small tools inside there, and that was just loose, laying on the inside on the bottom of the bag.
> And there was two other packages of money, United States currency located—one of them was hidden inside of a Shredded Wheats box, in the bottom of a Shredded Wheats box. It was heat sealed. The bag was heat sealed, in the bottom, and there was Shredded Wheats placed on top of that, and the box was closed. That was located amongst the tools in the back of the van on the driver's side. The third bag was vacuum sealed and located on the left side on the floor of the van.

In Officer Clyde's experience, the only time he came across heat- or vacuum-sealed money was when the individual was involved in narcotics trafficking. Szymczak stated that he routinely heat-sealed multiple things in the same manner as the heat-sealed currency. The money was in the following denominations: 95–$100 bills; 144–$50 bills; 2133–$20 bills; 164–$10 bills; and 40–$5 bills. The police later took the money to an Iowa State Patrol post and a trained narcotics detection dog alerted to the odor of narcotics where the police placed the hidden money.

Szymczak explained to Officer Clyde that the $61,200 comprised his life savings. He said that did not trust banks and had buried the money at an undisclosed location on Bureau of Land Management property in California. Szymczak claimed that he had accumulated this money over the past approximately twenty-five years while working as a cable splicer in the telephone line repair business. He worked for fourteen years at one company, and then found periodic employment thereafter from browsing through a trade journal. In 2001, he worked for two companies, making between $40 and $50 per hour. Szymczak said he saved approximately $200,000 from his employment through 2001. From 2002 through 2005, Szymczak did not work, but lived off his savings. After four months of working in 2006, he reported gross receipts of $45,850, with an adjusted gross income of $4,063 on his tax return. Szymczak then worked again in 2008 from May through August. He earned $30,855 in gross receipts for these four months and reported an adjusted gross income of $9,817 on his tax return. From September 2008 to February 2009, he spent approximately $46,380. Szymczak stated that as of February 2009, the remainder of his life savings was approximately $61,000. In February 2009, Szymczak had three bank accounts in California, Wisconsin,

and Michigan. All of these accounts contained amounts between \$200 and \$3000, and are not included within the \$61,200 in dispute here.

The police subsequently found marijuana in a full search of the vehicle. Marijuana was found in multiple places including where the money had been located on the top shelf, left side of the van; in the driver's compartment, between the seats; in plastic bags; in heat-sealed bags; and in pill bottles. There was also a various assortment of drug paraphernalia found in the van, including rolling papers, lighters, and medicine bottles that contained hashish. Szymczak admitted that some of the marijuana was in bags heat-sealed in the same manner as the money. Based on the vehicle search, Szymczak pled guilty in November 2009 to possession of a controlled substance in the Iowa District Court for Pottawattamie County.[2]

Szymczak also told police that he had a rental storage unit in Michigan because he intended to move back to Michigan. When the Michigan State Police executed a search warrant on the storage unit, they found, *inter alia*, three hand guns; two digital scales; drug paraphernalia; and packaging materials that had marijuana residue on them. Szymczak admitted that these items, among others, were his property.

## II. ARGUMENTS

The government asserts that there are no genuine issues of material fact and it is entitled to summary judgment because it meets the preponderance of the evidence standard that the defendant currency is proceeds of a drug offense or had been used to facilitate a drug offense in violation of 21 U.S.C. §§ 841 or 846. The government argues that the totality of circumstances test supports a finding that the defendant currency is subject to forfeiture.

In support, the government cites to the amount of U.S. currency involved, the alert to currency by a trained drug detection dog, the manner in which the defendant currency was being transported, the travel between locations involved in drug trafficking, the claimant's lack of a legitimate income, the presence of drugs and drug paraphernalia found with the money, and the claimant's inadequate explanations as to how he had earned the money and why he had buried it in California.

The claimant to the defendant currency asserts that the totality of circumstances test does not support summary judgment in this case because there are several genuine issues of material fact that remain unresolved. Claimant asserts that he has sufficient sources of legitimate income to explain his possession of the defendant currency. Furthermore, he had legitimate personal reasons for traveling between Michigan and California. Finally, the denominations of the defendant currency are not indicative of drug activity. The claimant urges the Court to find that his explanations and evidence create genuine issues of material fact, and that the Court should deny the government's motion.

In its reply, the government argues summary judgment is warranted because there are no outstanding factual disputes. According to the government, claimant's self-serving affidavit does not obviate the "obvious and substantial disparity between the claimant's income and his expenditures." As such, the government urges the Court to find there are no genuine issues of material fact and to find by a preponderance of the evidence that the defendant currency is subject to forfeiture.

## III. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted only if, after examining all of the

---

2. Szymczak had previously been arrested in Michigan for possession of marijuana.

evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist as to the forfeitability of the property and that the moving party is entitled to judgment as a matter of law. *Reynolds v. Rehab-Care Group E., Inc.,* 591 F.3d 1030, 1032 (8th Cir.2010) (citing *Myers v. Lutsen Mtns. Corp.,* 587 F.3d 891, 893 (8th Cir. 2009)); *see also Kountze ex rel. Hitchcock Found. v. Gaines,* 536 F.3d 813, 817 (8th Cir.2008) ("[S]ummary judgment is appropriate where the pleadings, discovery materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law."); *United States v. Premises Known as 318 S. Third St.,* 988 F.2d 822, 825 (8th Cir. 1993). "[A]n issue of material fact is genuine if the evidence is sufficient to allow a reasonable jury verdict for the nonmoving party." *Great Plains Real Estate Dev., L.L.C. v. Union Cent. Life Ins. et al.,* 536 F.3d 939, 944 (8th Cir.2008) (quoting *Morris v. City of Chillicothe,* 512 F.3d 1013, 1018 (8th Cir.2008)). And "a fact is material if its resolution affects the outcome of the case." *Takes v. Life Inv. Ins. Co. of Am.,* 582 F.3d 886, 893 (8th Cir.2009) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Once the movant has properly supported his motion, the nonmovant "may not rest upon the mere allegations or denials of [the] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *One Blue 1977 AMC Jeep CJ–5, VIN J783EA07643 v. United States,* 783 F.2d 759, 762 (8th Cir.1986) (citing *Burst v. Adolph Coors Co.,* 650 F.2d 930, 932 (8th Cir.1981)). The nonmoving party is entitled to all reasonable inferences that can be drawn from the evidence without resort to speculation. *Sprenger v. Fed. Home Loan Bank of Des Moines,* 253 F.3d 1106,

1110 (8th Cir.2001). However, "the inquiry involved in ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidence standard of proof that would apply at the trial on the merits." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Hartnagel v. Norman,* 953 F.2d 394, 396 (8th Cir.1992) (district court "must bear in mind the actual quantum and quality the of proof applicable to support liability under the applicable law.").

Thus, the Court begins by explaining the evidentiary burden of proof for civil forfeiture claims and then addresses the government's motion for summary judgment in light of the civil forfeiture standard and the factual issues the parties present.

### IV. FORFEITURE PURSUANT TO 21 U.S.C. § 881(A)(6)

Seized property is subject to forfeiture pursuant to the Civil Asset Forfeiture Reform Act of 2000. 18 U.S.C. § 983(c)(1). This act increased the government's burden of proof from establishing probable cause for the forfeiture, to a preponderance of the evidence standard. *United States v. Premises known as 3639–2nd St., N.E., Minneapolis, Minn.,* 869 F.2d 1093, 1095 (8th Cir.1989). The government bears the burden of proving by a preponderance of the evidence that the defendant property is subject to forfeiture. *United States v. $124,700.00 in U.S. Currency,* 458 F.3d 822, 825 (8th Cir.2006). *See $124,700.00 in U.S. Currency,* 458 F.3d at 825. Pursuant to section 881(a)(6), the following property is subject to civil forfeiture:

All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation

of this subchapter, all proceeds traceable to such an exchange, . . . .

§ 881(a)(6).

▆▆ However, the government can use circumstantial evidence to demonstrate that the defendant money is substantially connected to the asserted drug-related crime. *United States v. Dodge Caravan Grand SE/Sport Van, VIN # 1BGP44G2YB7884560*, 387 F.3d 758, 761 (8th Cir.2004); *United States v. $84,615.00 in U.S. Currency*, 379 F.3d 496, 501 (8th Cir.2006). It is not necessary that the government "trace the property to a specific drug transaction." *United States v. $87,060.00 in U.S. Currency*, 23 F.3d 1352, 1354 (8th Cir.1994) (citing *United States v. $91,960.00 in U.S. Currency*, 897 F.2d 1457, 1462 (8th Cir.1990)). "Nevertheless, the quality of the circumstantial evidence . . . must be strong enough to support reasonable grounds for belief that an actual, rather than purely theoretical, connection exists between the currency in claimants' possession and the drug trade." *United States v. $10,700.00 in U.S. Currency*, 258 F.3d 215, 225 (3d Cir.2001) (citation omitted).

▆▆ In its analysis, a court must judge whether the government has met the preponderance of evidence standard "with a common sense view to the realities of normal life." *Premises known as 3639–2nd St.*, 869 F.2d at 1097 (citing *United States v. $4,255,000.00 in U.S. Currency*, 762 F.2d 895, 904 (11th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986)). "It is appropriate to rely upon forfeiture case law decided before the enactment of CAFRA. Although those cases applied the less-burdensome probable cause standard, '[f]actors that weighed in favor of forfeiture in the past continue to do so now—with the obvious caveat that the government must show more or stronger evidence establishing a link between forfeited property and illegal activity.'" *United States v. $21,510.00 in U.S. Currency*, 144 Fed.Appx. 888, 890 n. 2 (1st Cir.2005) (quoting *United States v. Funds in Amount of $30,670.00*, 403 F.3d 448, 469 (7th Cir.2005)). Additionally, the government may use evidence gathered after filing the complaint in order to support its burden of proof. 18 U.S.C. § 983(c)(2).

▆▆ If the government successfully meets its burden of proof, then the burden shifts to the claimant to prove that the property is not subject to forfeiture. *United States v. Real Property Located at 3234 Wash. Ave.*, 480 F.3d 841, 843 (8th Cir.2007). Or, in other words, the claimant "then has the burden of proving that he is an innocent owner by a preponderance of the evidence." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 508–09 (5th Cir.2008) (citing 18 U.S.C. § 983(d)(1)). *But see United States v. $20,000.00 in U.S. Currency*, 149 Fed. Appx. 555, 556 (8th Cir.2005) (summary judgment for government proper because government met its burden of proof and claimant "failed to meet her burden of showing by a preponderance of the evidence that the $20,000 was not connected to drug-trafficking activities.") (per curiam). Here, the Court denies summary judgment because it finds there are genuine issues of material fact. *See United States v. 392 Lexington Parkway S., St. Paul, Minn., Ramsey County*, 386 F.Supp.2d 1062, 1072 (D.Minn.2005) (court denied summary judgment as genuine issues of material fact existed as to whether claimant had priority in the mortgage).

### A. Amount of Currency and Manner of Concealment

The government asserts that the amount of currency and the manner of concealment supports a finding that the defendant money is connected to drug activity. Claimant contends that the majority of the

currency is in large denominations and he disputes that the money was concealed in a manner indicative of drug activity.

■■■ A large amount of cash is "strong evidence" connecting the money to illegal drug activities. *United States v. $117,920.00 in U.S. Currency*, 413 F.3d 826, 829 (8th Cir.2005) (found $117,920.00 in possession of claimant); *$84,615 in U.S. Currency*, 379 F.3d at 501 (found $84,615 in possession of claimant); *United States v. $39,873.00 in U.S. Currency*, 80 F.3d 317, 318 (8th Cir.1996) (found $39,873.00 in possession of claimant). The presence of money consisting of small denominations may also be demonstrative of criminal activity. *See Boultinghouse v. Hall*, 583 F.Supp.2d 1145, 1169–70 (C.D.Cal.2008) (large amount of money in small denominations and bundled currency consistent with drug trafficking); *United States v. $78,850.00 in U.S. Currency*, 517 F.Supp.2d 792, 799 (D.S.C.2007) (factors supporting a finding for forfeiture include money with small denominations, concealment of money, and unusually large amount of money).

■■■ How the money is concealed and packaged may further establish a connection between the money and drug activity. *$117,920.00 in U.S. Currency*, 413 F.3d at 829 (citing *$84,615 in U.S. Currency*, 379 F.3d at 502) (packaging money to mask drug odors was evidence of connection to drug trafficking). It is common practice to mask the smell of drug-tainted money by wrapping it in a material, such as cellophane, to prevent discovery by drug-sniffing dogs. *United States v. $42,500.00 in U.S. Currency*, 283 F.3d 977, 982 (9th Cir. 2002). Another "common ploy to mask odors such as might be detected by dog searches" is to transport the money in vacuum-sealed bags. *$84,615 in U.S. Currency*, 379 F.3d at 502. Claimants may conceal money while traveling cross-country to deter would-be thieves, but a court should determine whether the real purpose is a desire to conceal criminal activities. *See id.* The Court must use "a common sense view that bundling and concealment of large amounts of currency, combined with other suspicious circumstances, supports a connection between money and drug trafficking." *$124,700.00 in U.S. Currency*, 458 F.3d at 826 (citation omitted). Further, a claimant must offer "competent evidence suggesting an innocent reason for packaging the currency in this unusual fashion." *$42,500.00 in U.S. Currency*, 283 F.3d at 982.

A very similar set of facts to this case occurred in *$84,615.00 in U.S. Currency*. The police pulled the claimant over on a routine traffic stop and found marijuana and $84,615 in U.S. currency during a consensual search. *Id.* at 498. Police recovered "seven air-tight bundles that contained $64,115 in a sealed, padded UPS Next Day Air package." *Id.* The police found an additional $20,500 in a bag in the trunk. *Id.* The claimant contested a civil forfeiture action, asserting that the police could not establish a substantial connection based on the "mere fact" that claimant had marijuana and the defendant currency in his possession while driving to California. *Id.* at 500–01. The court disagreed. *Id.* at 501. At a bench trial, it found that the amount of money, possession of illegal drugs, a drug dog alert, and the claimant's "attempt[] to conceal the money's presence" was sufficient to show a substantial connection between the currency and drug trafficking. *Id.* at 502.

The Court finds that claimant was carrying a large sum of money in small denominations and that the money was concealed in a suspicious manner. *See $39,573.00 in U.S. Currency*, 80 F.3d at 318; *$84,615.00 in U.S. Currency*, 379 F.3d at 502. The Eighth Circuit has held $39,573 to be a large sum of money, and here, claimant

had $61,200 in his possession. Additionally, 2337 of the bills, totaling $44,500, were in currency denominations of $20 or less.[3] Claimant argues that 90% of the currency was in the top three largest denominations of currency,[4] but this figure includes the $20 bills. If the $20 bills are excluded, then less than one-third of the currency was in the two highest denominations of currency—$50 or $100 bills. The Court finds there is no genuine issue of material fact as to the denominations and the amount of money the claimant carried.

The Court must also look to the manner of packaging to determine whether there remains a genuine issue of material fact. Claimant had the money located in three areas of the van. Two heat or vacuum-sealed bags contained $36,000 and $17,000, respectively, and loose money in a cloth bag totaled $8200. The majority of the money was therefore in sealed bags and the bags were hidden in a suspicious manner. For example, one bag was at the base of a Shredded Wheats box with the bag or contents of Shredded Wheat on top of the money, while another bag was lying on the floor of the van.[5] There is not a genuine issue of material fact that money packaged in this style is indicative of illegal activity. Neither party disputes how the money was concealed and it remains for the Court to determine whether this packaging established a substantial connection to drug trafficking.

The Court finds there are no uncontroverted facts as to the denominations of defendant currency and how the claimant concealed the defendant money. *See United States v. $99,990.00 in U.S. Currency,* 69 Fed.Appx. 757, 762–64 (6th Cir. 2003) (under either the pre- or post-CAFRA burden of proof, affirming summary judgment in government's favor because money was " 'packaged in a manner indicative of illegal drug activity-heat-sealed and wrapped in tape'; court accounted for totality of circumstances, including claimant's false and misleading statements, canine alert, suspicious driving, and claimant's failure to adequately explain his legitimate income"). *See United States v. $159,880.00 in U.S. Currency,* 387 F.Supp.2d 1000, 1019 (S.D.Iowa 2005) (court affirming report and recommendation for summary judgment in favor of government; government showed by a preponderance of evidence that the currency was substantially related to a drug offense and claimants "failed to offer sufficient evidence to create a genuine issue of material fact contradicting the government's evidence that the money in the [car] was the proceeds of drug trafficking."). The Court thus finds there is no genuine issue of material fact as to the claimant's amount of money, denominations of money, and manner of concealment, being indicative of drug activities.

### B. Transportation Route

■ The government next argues that the claimant's transportation route, from California to Michigan, supports a finding that he was engaged in criminal activity. The government suggests that California

---

3. Below is a chart illustrating the amount of each denomination of currency:

| Number of Bills | Denomination | Amount |
| --- | --- | --- |
| 95 | $100 | $9,500 |
| 144 | $50 | $7,200 |
| 2133 | $20 | $42,660 |
| 164 | $10 | $1,640 |
| 40 | $5 | $200 |
| **2576** | | **$61,200** |

4. FAQS: Currency: Denominations, U.S. Department of the Treasury, *available at* http://www.ustreas.gov/education/faq/currency/denominations.shtml.

5. The evidence before the Court does not establish whether there were other items obscuring or covering this second heat- or vacuum-sealed bag from view.

and Michigan are areas noted for their involvement in drug trafficking. Claimant asserts that he had legitimate reasons for traveling between Michigan and California. He initially traveled to Michigan with the purpose of visiting family and friends. He carried the large sum of money in expectation of placing it in a safe at his pole barn in Michigan. Therefore, claimant asserts that the Court should not find that his transportation route was tied to criminal activity.

The Eighth Circuit has held that courts should consider evidence of travel between areas known for drug-trafficking activity to be a relevant factor, and California is known to be a drug source state. *United States v. Gill,* 513 F.3d 836, 839 (8th Cir. 2008) (according to Iowa State Patrol trooper experience in traffic stops, California is a known drug source state); *United States v. $141,770.00 in U.S. Currency,* 157 F.3d 600, 604 (8th Cir.1998) (holding forfeiture of currency proper when "the camper had originated in California, a drug source state, and was on its way back to California with a very large amount of cash after having spent time in the upper Midwest, a drug destination area"); *United States v. Carrate,* 122 F.3d 666, 669 (8th Cir.1997) (defendant en route from California, a point of origin for illegal drugs, to Chicago, a common destination for the shipment of illegal drugs). The Midwest is a "drug destination area." *$141,770.00,* 157 F.3d at 604.

Here, the claimant engaged in preparations to move from California to Michigan in late 2008 and early 2009. From December 2008 to February 2009, claimant admits he made three separate trips to Michigan from California.[6] The Midwest may

be a "drug destination" area with "heavy drug trafficking," but the claimant states he made the trip from California to Michigan for personal reasons. Viewing the evidence in the light more favorable to the claimant, the Court concludes there is a genuine issue of material fact remaining as to whether claimant's travel was for personal or drug trafficking purposes.

*C. Drug Presence and Paraphernalia*

The government also asserts that the presence of drugs and drug paraphernalia, as well as the alert from a trained drug detection dog, further indicates that the defendant money is connected to drug trafficking. Claimant does not refute the government's argument that these factors are, collectively, indicators of criminal activity.

 Although an undetermined, but high percentage of currency in circulation in the United States "is contaminated with drug-residue", *Muhammed v. Drug Enforcement Agency, Asset Forfeiture Unit,* 92 F.3d 648, 653 (8th Cir.1996), positive alerts by drug dogs are entitled to some probative weight that certain monies are substantially connected to illegal drugs. *$84,615.00 in U.S. Currency,* 379 F.3d at 502. A smell of marijuana in a vehicle and a later alert by a trained drug dog supports a finding of a connection between the defendant currency and drug activity. *$117,920.00 in U.S. Currency,* 413 F.3d at 829 (citing *$84,615.00 in U.S. Currency,* 379 F.3d at 502; *United States v. $141,770.00 in U.S. Currency,* 157 F.3d 600, 604 (8th Cir.1998); *United States v. U.S. Currency in the Amount of $150,660.00,* 980 F.2d 1200, 1206 (8th Cir. 1992)). But "[t]he 'smell of money' [alone] should not motivate law enforcement agen-

---

**6.** While in Michigan for approximately three weeks in February 2009, the claimant rented a car for two weeks of that time and put 3240 miles on it. He asserts that the majority of these miles came from driving around Michi-

gan and possibly visiting Chicago. The government does not argue that claimant's travel while in the Michigan area is indicative of drug activity or that it lends support to the Midwest as a drug destination area.

cies to argue that a 'smell on money' is sufficient proof of illicit narcotic activity." *U.S. Currency in the Amount of $150,660.00,* 980 F.2d at 1208 (Bright, J., dissenting).

Here, the claimant does not dispute ownership of the drugs or drug paraphernalia found in his possession in the white van. While of slight probative value, a properly trained drug dog also alerted to the presence of drugs on the defendant currency. *$124,700.00 in U.S. Currency,* 458 F.3d at 826. Police officers uncovered drugs and drug paraphernalia in claimant's white van, and drug paraphernalia as well as weapons in the Michigan storage unit. Claimant does dispute the government's assertion that the items found in the Michigan storage garage establish a substantial connection to the defendant currency and drug trafficking. But the Court finds there is not a genuine issue of material fact that the drugs and drug paraphernalia found in the van and storage garage in Michigan indicative of the illegality of the currency's source.

### D. Claimant's Explanations

Lastly, the government argues that the defendant money is substantially related to drug activity because claimant has a lack of legitimate income and he has implausible explanations as to the source of the defendant money. The government contends that the tax returns the claimant provided for 2006 and 2008 "do not explain how the claimant came to have the amount of $61,200 that was seized, as well as the more than $45,000 he spent." Additionally, the government contends that the claimant's explanations are "implausible" in that he did not trust banks when he had three open bank accounts and that the $61,200 constituted his life savings. However, implausible evidence can still defeat a motion for summary judgment.

In response, the claimant argues that there are remaining genuine issues of material fact in dispute as to his explanations of the source of the defendant currency. Claimant argues that his "inability to provide any further documentation should not be weighed against him" because the government requested documents only as to the sources of "any" of the $61,200, not the entire amount. Claimant also contends that the government has not discredited claimant's life savings as a cable splicer for the past twenty-five years as a source for the defendant currency.

The Court looks to whether there is a genuine issue of material fact as to the source of the defendant currency. A claimant's bare assertion that money derives from a legitimate source is an insufficient explanation. *See United States v. Approximately $1.67 Million (in US) in Cash, Stock, and Other Valuable Assets,* 513 F.3d 991, 1000 (9th Cir.2008). Likewise, a court may give "considerable weight" to evidence that income is substantially unsupported when there are "limited incomes and significant debts during the relevant period." *United States v. $252,300.00 in U.S. Currency,* 484 F.3d 1271, 1275 (10th Cir.2007) (citing *United States v. $174,206.00 in U.S. Currency,* 320 F.3d 658, 662 (6th Cir.2003)).

For example, in *$39,873.00 in U.S. Currency,* the Eighth Circuit found it highly unlikely that a large amount of cash represented life savings. *$39,873.00 in U.S. Currency,* 80 F.3d at 319 The claimant in that case had not worked for a year before his arrest and had no other source of income. *Id.* The presence of drugs and drug paraphernalia also undercut the claimant's argument that he was not involved in drug trafficking. *Id. See also $84,615.00 in U.S. Currency,* 379 F.3d at 501 (Eighth Circuit affirmed lower court's findings that claimant's "proffered explanations [in]credible ... that the money represented his life savings, money from his uncle, and the

closing out of his mineral and gem business.").

The Sixth Circuit agreed that evidence supporting sources for "legitimate income was insufficient to explain the large amount of currency found in [defendants'] possession" in *United States v. $174,206.00 in U.S. Currency*, 320 F.3d 658, 662 (6th Cir.2003). In *$174,206.00*, the defendants were arrested and charged in July of 1999 for trafficking cocaine. *Id.* at 660. Pursuant to a search warrant, police discovered $174,206.00 in safe deposit boxes and filed a forfeiture petition for the recovered currency. *Id.* The defendants resisted the forfeiture and claimed that they had legitimate sources of income for the defendant currency. *Id.* Between the two of them, tax returns for the years 1998 and 1999 only totaled $31,142.00 in legitimate income. *Id.* at 662. The court held that "[t]his evidence of legitimate income that is insufficient to explain the large amount of property seized, unrebutted by any evidence pointing to any other source of legitimate income or any evidence indicating innocent ownership, satisfies the burden [allowing forfeiture] imposed by the statute." *Id.*

In this case, the Court views the facts in the light most favorable to claimant as to his explanations for the source of the legitimate income. The government attempts to prove by an absence of tax records and other documents, that claimant cannot attribute the defendant currency to legitimate sources of income. Claimant produced tax returns for 2006 and 2008; only two years out of the five years the government requested. Claimant asks the Court to not weigh this absence of records against him "because claimant was either unemployed and had no reportable income, or the years in question are so far removed so as to be unreasonable to expect claimant to still have said tax returns." The Court considers the absence of tax returns as a supporting factor in the claimant's own assertion that he did not have income for the years 2004, 2005, and 2007, as well as his admitted statement that he did not have income from 2002 and 2003. The claimant asserted that as of 2001, he had accumulated approximately $200,000 in life savings from working twenty-five years as a cable splicer. Added to the life savings are the tax returns from 2006 and 2008 that indicate he had a collective adjusted gross income of $13,880, for these two years. Claimant has admitted that he had no other sources of income besides the income reported on these tax returns. But according to claimant's testimony, he then spent more than $45,000 from September 2008 to February 2009.

The claimant also argues that the government only asked him to provide "any source" of income and did not ask for an explanation as to the source of the entire amount. The government has not offered evidence contradicting, as a matter of law, claimant's assertion that the bulk of the defendant currency was the product of his life savings. The government has not conclusively disproved the defendant currency did not come from claimant's life savings or the income reported for 2006 and 2008. The Court finds there is a genuine issue of material fact on the origin of the defendant currency. *See United States v. Premises Known as 7725 Unity Ave. N., Brooklyn Park, Minn.*, 294 F.3d 954, 956 (8th Cir. 2002) (reversed district court's granting of summary judgment; district court had ordered forfeiture based on claimant's failure to show sufficient legitimate income); *United States v. $256,235.97*, 691 F.Supp.2d 932, 944 (N.D.Iowa 2010) (court denied summary judgment because conflicting evidence as to whether there was a substantial connection between defendant property and if it was "comprised of proceeds from the harboring of undocumented aliens"); *United States v. $138,186.28 in U.S. Currency*, 520 F.Supp.2d 1072, 1078–

79 (N.D.Iowa 2007) (court denied summary judgment as government failed to prove that no genuine issue of material fact existed and there was no "evidence to show that the defendant property is traceable to the interstate transportation of stolen property"). Despite obvious credibility problems, there is evidence that this money is from his life savings.[7] Because the Court is required to take evidence in a light most favorable to the claimant, the Court finds that claimant has established a genuine issue of material fact on whether the defendant currency is the product of his life savings or the proceeds of illegal drug activity.

### V. CONCLUSION

The government's case here is obviously strong. However, the Court finds there are genuine issues of material fact relating to the source of the defendant currency.

Upon the foregoing,

**IT IS ORDERED**

Plaintiff United States of America's Motion for Summary Judgment [Dkt. No. 17] is DENIED.

---

7. Courts have granted summary judgment when claimants have not adequately presented any genuine issues of material fact for the source of legitimate income. *See, e.g., United States v. $493,850.00 in U.S. Currency,* 518 F.3d 1159, 1170 (9th Cir.2008) ("summary judgment proper for government where claimants did not prove by a preponderance of the evidence, among other things, any "evidence regarding an alternate theory of origin for the currency" as well as it being more likely than not that the currency was substantially connected to cocaine trafficking"); *United States v. $110,873.00 in U.S. Currency,* 159 Fed.Appx. 649, 651–52 (6th Cir.2005), *rehearing en banc denied* (Feb. 28, 2006) (affirming summary judgment in favor of forfeiture where the district court determined there was "no material fact dispute regarding the required nexus between the currency and drug-distribution activity, relying upon the absence of evidence of legitimate income that could explain the possession of this currency"; there were no state income tax returns from 1994 to 2002 but an "unusually large amount of currency", the presence of drugs, and a drug-detection dog alert to the currency); *United States v. $174,206.00 in U.S. Currency,* 320 F.3d 658, 661–62 (6th Cir.2003) (summary judgment proper because "legitimate income was insufficient to explain the large amount of currency found in their possession" because legitimate income accounted for only $31,142 and the claimants' safe deposit boxes in dispute contained $174,206).